Barry, *et al.*, *vs.* Crowley.—1846.

PATRICK CROWLEY *vs.* SAMUEL M. BARRY AND JOHN HURST.—PATRICK CROWLEY *vs.* JAMES A. SANGSTON AND GEO. E. SANGSTON.—*December* 1846.

*another point as to presentment to partners after dissolution See p. 203*

In an action by an endorsee against the payee and endorser of a negotiable note, the maker is a competent witness to prove the execution of the note by himself and partners, as makers, and the endorsement by the defendant.

By the act of 1837, ch. 253, the legislature designed, as to the mode of proof of demand, and notice, to place foreign and inland bills upon the same footing ; and, as regarded inland bills and notes, to dispense with the necessity of producing oral proof of demand and notice, by substituting therefor the protest of the notary, duly made.

In the case of foreign bills, the protest of a notary, duly authenticated by his seal, is received as proof of demand and notice, as therein stated.

When a protest, or an authenticated copy thereof, is offered in evidence, it must be received on the footing of the *lex fori*, and the only enquiry is, whether the protest has been duly made ?

When a protest states, in substance, a demand on the drawer, and notice of non-payment, it is sufficient in point of form.

When the the court can perceive that a seal is attached thereto, the protest is sufficiently authenticated ; neither the seal, nor the signature of the notary, need be proved.

Where it was in proof, that the defendant had directed his letters to be sent to *M*, where he had an agent who would deliver letters, there arriving, to him ; and it was also in proof, that the defendant received letters at a post office four miles nearer his residence than *M*, he cannot set up, the want of due diligence, in sending his notices of protest to him at *M*.

The protest of a promissory note of *W & S*, dated, payable, and protested at the city of *Washington*, which certified, that the notary demanded payment of it from *W*, one of its makers, and was answered, *C* has to pay it, we cannot, and that on the same day he deposited in the post office notice of protest to *C*, (the endorser,) at *M*, states a sufficient demand and notice to bind *C*.

*W*, *S*, *D & C*, agreed to sell to *C* all the books, debts, credits, &c., of the firm of *S & W*, and of the firm of *D & S*, estimating the same at $4526, for ten dollars in cash, and certain outstanding, enumerated notes of the two firms, amounting to $5153.75, and *C* bound himself to pay said notes when due. In an action upon one of said notes of *S & W*, against *C*, the endorser, by the holder thereof, he proved, that he had already obtained judgment against *S*. HELD, that this agreement did not render *S* an incompetent witness in the cause, for the plaintiff. If the witness was compelled to pay the note, he could recover upon the agreement against *C*, and by paying the judgment against him, he would not be entitled to an assignment of it, as he was not a security for *C*.

The declaration alleged, that a note on which the suit was brought, was made at the county aforesaid, when the note in fact was dated at the city of *W;* this is no variance.

The place where a note is dated, is clearly immaterial.

APPEALS from *Prince George's* county court.

These were actions of *assumpsit*, brought by the appellees against the appellants, argued together in this court.

In the first cause, No. 10, the claim arose on the following note and protest:

"$309.30. WASHINGTON CITY, 16*th March* 1842.

Nine months after date, we promise to pay *P. Crowley*, or order, three hundred and nine dollars and thirty cents, for value received. WALL & SASSCER."

Endorsed, "*P. Crowley, Barry & Hurst.*"

"DISTRICT OF COLUMBIA, *Washington county*, *sct.* Be it known, that on the 19th December 1842, I, *Thomas Corcoran*, notary public for the county aforesaid, residing in said county, duly commissioned and sworn, at the request of the president and directors of the *Bank of the Metropolis*, presented to *Mr. Wall*, one of the drawers, the original note, whereof the above is a true copy, and demanded of him payment of the sum of money in the said note specified, whereunto he answered, '*Mr. Crowley* has to pay it.' On the same day, I deposited in the post office, *Washington*, notice of protest to *P. Crowley*, *Upper Marlborough, Md.*, and to each of the other endorsers, enclosed to *R. Mickle, Esq., cash'r, Balto., Md.* Wherefore I, the said notary, at the request aforesaid, do hereby protest against the drawers and endorsers of the bill aforesaid, and all persons liable for, or chargeable with, the sum of money in the said bill specified, for as well the same sum of money, as for all legal interest, damages, costs and charges, which have accrued, or which may accrue, by reason of the non-payment of said sum of money, according to the tenor of the said bill. Thus done and protested on the 19th day of December 1842. In testimony whereof, I have hereto set my hand, and affixed (Seal.) my notarial seal of office.

THOS. CORCORAN, Notary Public."

"Cost of protest, $1.75."

1ST EXCEPTION. At the trial of this cause, the plaintiffs, in support of the issues joined on their part, offered to prove by *William B. Sasscer*, that the note on which this suit is brought, was made by the firm of *Wall & Sasscer*, the witness, and one

*Sam'l T. Wall,* being the members of said firm; and that the said note was endorsed by the defendant. But the defendant objected to the testimony of said witness, on the ground that he was one of the makers of the said note, and incompetent as a witness to charge the defendant. The court, (MAGRUDER, C. J.,) overruled this objection, and permitted the testimony of said witness to go to the jury. The defendant excepted.

2ND EXCEPTION. In addition to the testimony contained in the preceding exception, and which is, by agreement, made part of this, the plaintiffs, to prove that the said note had been duly presented for payment to the makers, and that notice of demand and non-payment was duly given to the defendant, offered in evidence the note and protest aforesaid.

And further proved by the said *William B. Sasscer,* that the defendant, in the spring or summer of the year 1842, requested him, if he had any business with him, the defendant, to address him by letter at *Upper Marlborough,* and his letters would be sent to him, when he could not call for them.

The defendant then proved, that at the time that the said note became due, he resided within a few miles of the *Long Old Fields,* where a post office was kept; and that *Upper Marlborough* was four miles further from the residence of the defendant, than the post office at the *Long Old Fields.*

The plaintiffs then proved by competent testimony, that *Upper Marlborough,* the place to which the defendant directed that his letters on business from said *Wm. B. Sasscer* should be sent, is, and was, the county town at the time, where a post office is and was kept, and where the defendant had a brother-in-law living at the time, and by whom, as the defendant told the witness, his letters as aforesaid would be sent him, the defendant, when he did not call for them himself.

The defendant prayed the court to instruct the jury, that upon all the evidence offered, if believed by the jury, the plaintiffs were not entitled to recover: because the said protest, as offered in evidence, was not admissible or sufficient *to prove demand for payment* of the said note upon the makers thereof, and of non-payment, and of notice to the defendant of such demand and non-payment.

But the court, (MAGRUDER, C. J.,) refused the instruction. The defendant excepted.

3RD EXCEPTION. In addition to the evidence contained in the preceding exceptions, which, by agreement, is made part of this, the defendant proved, that the partnership of *Wall &* *Sasscer* was dissolved in March 1842; that public notice thereof was given in the *National Intelligencer*, a paper published in *Washington*, in the *District of Columbia*, and that the settlement of the partnership concerns devolved on the said *William B. Sasscer*, who continued to reside in the city of *Washington*, where the note was made, until after December, in the year 1842. The plaintiffs then proved, that they do now reside, and did reside, in the city of *Baltimore*, in *Maryland*, during the whole of the year 1842; and thereupon the defendant prayed the court to instruct the jury, that if they find from the evidence, that the partnership was dissolved at the time the said note became due, that public notice was given, as aforesaid, of said dissolution, that the settlement of the business of the firm devolved on the said *William B. Sasscer*, that he resided in *Washington* when the note became due, and that the demand was made on *Wall* alone, that the plaintiffs have failed to prove such a demand and notice to the endorser as entitle them to recover, and their verdict must be for the defendant. The court refused to give the instruction as prayed. The defendant excepted.

4TH EXCEPTION is omitted.

The action in the second appeal, No. 6, was founded upon the following note and protest:

"Dolls. 1204.85.

WASHINGTON CITY, *March 16th*, 1842.

Eight months after date, we promise to pay P. *Crowley*, or order, twelve hundred and four dollars, eighty-five cents, value received. WALL & SASSCER."

Endorsed, "*P. Crowley, J. & G. E. Sangston & Co., Wm. Tiffany.* Pay *R. Smith*, cash., or order.

R. MICKLE, Cash."

"DISTRICT OF COLUMBIA, *Washington county, sct.* Be it known, that on the 19th November 1842, I, *Thomas Corcoran*, notary public for the county aforesaid, residing in said county, duly commissioned and sworn, at the request of the president and directors of the *Bank of the Metropolis*, presented to *Mr. Wall*, one of the drawers, the original note, whereof the above is a true copy, and demanded of him payment of the sum of money in the said note specified, whereunto he answered, '*Mr. Crowley* will pay it, we cannot.'

" On the same day I deposited in the post office notice of protest to *P. Crowley, Upper Marlborough, Maryland*, and to each of the other endorsers, enclosed to *R. Mickle, Esq.*, cash., *Baltimore, Maryland.*

"Wherefore I, the said notary, at the request aforesaid, do hereby protest against the drawers and endorsers of the note, aforesaid, and all persons liable for, chargeable with, the sum of money in the said note specified, for as well the same sum of money, as for all legal interest, damages, costs, and charges, which have accrued, or which may accrue, by reason of the non-payment of said sum of money, according to the tenor of the said note. Thus done and protested on the 19th day of November 1842. In testimony whereof, I have hereto set my (Seal.) hand and affixed my notarial seal of office,

     THOMAS CORCORAN, Notary Public."

"Cost of protest, $175."

5TH EXCEPTION. After the preceding testimony had gone to the jury, which by agreement is made part of this exception, the defendant offered in evidence to the court and jury, the following paper :

      "WASHINGTON, *July 22nd*, 1842.

" We, the undersigned, do hereby sell and assign all the books, papers, debts, credits, and evidences of debts and credits of *William B. Sasscer* and *Samuel T. Wall*, by the name of *Sasscer & Wall*, and of *William L. Dixon* and *William B. Sasscer*, by the name of *Sasscer & Dixon*, to *Patrick Crowley*, in consideration of the sum of ten dollars, current money, said debts, credits, and evidences of debts and credits, amounting in gross to about the sum of $7000; the

price agreed upon is the sum of $4526, valuing the same at sixty-two cents in the dollar. The terms of payment are, ten dollars cash, the balance to be paid by the payment, when due, of certain notes of *William B. Sasscer* and *Samuel T. Wall*, by the name of *Wall & Sasscer*, to become due and payable at the times, in the amounts, and to the persons and firms following :—*Jas. A. & Jas. E. Sangston*, November 19*th*, 1842, $1204.85. *William Henry*, October 19th, 1842, $312.97. Same, December 19th, 1842, $312.77. *Barry & Hurst*, October 19th, 1842, $309.30. *Edward Pittman & Co.*, August 18*th*, 1842, $698.75. Same, October 18th, 1842, $698.75. Same, December 18th, 1842, $698.75. Same, February 18th, 1843, $698.75. *Jas. A. & J. E. Sangston*, December 30th, 1842, $218.57. Amounting in all to $5153.75. Said *Crowley* hereby binds himself, in consideration of said sale, to pay said notes when due, to the holders thereof.—Said *William B. Sasscer* and *Samuel T. Wall*, and *William L. Dixon*, have received,—which is hereby acknowledged,—the said sum of ten dollars.

SAM'L T. WALL.
WILLIAM B. SASSCER.
WILLIAM L. DIXON.
P. CROWLEY. "

Which he proved by the said *Sasscer*, was executed by the parties whose names are thereto signed, with the knowledge and consent of the plaintiffs in this cause; and also proved by the records of *Prince George's* county court, that the said plaintiffs have already obtained a judgment against the said *Sasscer*, upon the very note on which this suit is brought.

The defendant's counsel had informed the court and the plaintiffs' counsel, in the commencement of said *Sasscer's* examination, that other objections than the one presented by the first exception would be made to his competency, on the ground of interest, in the course of the trial, when the defendant came to offer his proof, and the court said, that it would be competent for him to do so. And thereupon the defendant insisted, that the said *Sasscer* was incompetent as a witness in this cause, for the plaintiff, because he was interested in pro-

curing a judgment against the defendant in this cause; as he was liable to the plaintiffs on the judgment against him; and if he were made to pay the same, he would be entitled to an assignment of the judgment against the defendant, obtained in this cause. And prayed the court to exclude from the jury, all the testimony of the said *Sasscer*. But the court, (MAGRUDER, C. J.,) were of opinion that he was a competent witness, notwithstanding the execution of said paper, and refused to exclude his testimony. To which opinion of the court, and the refusal of the court to exclude the testimony of said *Sasscer*, the defendant excepted.

6TH EXCEPTION. Upon all the testimony in the preceding exceptions, which, by agreement, is made part of this, the defendants insisted, that the plaintiffs could not recover under the pleadings in this cause, because of a variance between the declaration and the proof, in this, that the declaration does not state the note to have been made at *Washington* city, to wit, at the county aforesaid, and does not aver, that the presentment and demand of payment of the maker, was made in *Washington* city, to wit, at the county aforesaid. And also, in this, that the presentment and demand is alleged to have been made of *Wall & Sasscer*, whereas no demand is proved to have been made of said *Sasscer*, but of *Wall* alone, after the said partnership was dissolved; and prayed the court to instruct the jury accordingly; but the court, (MAGRUDER, C. J.,) overruled the objections, as to variance between the pleadings and proof, and refused to give the instruction as prayed. To which opinion of the court, and their refusal of the instruction, as prayed, the defendant excepted.

The defendant appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, SPENCE, and MARTIN, J.

By DIGGES and TUCK, for the appellant, and
By C. C. MAGRUDER and J. JOHNSON for the appellees.

ARCHER, C. J., delivered the opinion of this court.

This, (No. 10, the first appeal,) is a suit by the endorsee of a note against the endorser and payee, and the question arising on the first bill of exceptions is, whether the maker of the note is a competent witness for the plaintiff, to prove the execution of the note by himself and partner, as makers, and the endorsement by the defendant? The witness was answerable, in any possible event of the suit, for the amount of the note, and could therefore have no interest in its event. He may, indeed, be considered as testifying against his interest, for if the plaintiff should recover, he would be answerable to the defendant for the costs of this suit. It has accordingly been often adjudged, that in the like circumstances the maker of a note is a competent witness. 1 *Greenl. Ev.*, 430, *note 2*, and authorities there cited.

The only question raised in the second exception is, whether the protest offered, was evidence to prove demand and notice?

By the act of 1837, ch. 253, relating to promissory notes and bills of exchange, a protest by a notary public, duly made, shall be *prima facie* evidence, in the case of inland and foreign bills, of non-payment or non-acceptance, and of presentment for payment and acceptance, at the time and in the manner stated in the protest; and the act further declares, that when such protest shall state, that notice of such non-payment or non-acceptance has been sent or delivered to the party or parties to such note or bill, and the manner of such notice, such protest shall be *prima facie* evidence, that such notice has been sent or delivered in the manner therein stated. The design of this act of the legislature, as to the mode of proof, of demand and notice, was to place foreign and inland bills upon the same footing, and as regarded inland bills and notes, to dispense with the necessity of adducing oral proof of demand and notice, by substituting therefor the protest of the notary, duly made. And as in the case of foreign bills, the protest of a notary, duly authenticated by his seal, was, before the act, received as proof of these facts, we should not be carrying out the intention of the law makers, unless we also received the certificate of the notary, authenticated by his seal, as proof of the demand and

26    v.4

notice stated therein.    The act, in its terms, is too imperative to admit of any doubt.    When the protest, or an authenticated copy thereof, is offered in evidence, it must be received on the footing of the *lex fori*, 2 *Hill N. Y. Rep.*, 230; and the only enquiry, therefore, would seem to be, whether the protest has been duly made?    This enquiry involves two considerations, its form, and its mode of authentication.    To its form, no available objections could be urged; in substance, it states a demand on the drawer, and notice of non-payment.    As to its mode of authentication, it is sufficient that we can perceive a seal to be attached thereto.    No proof is necessary, that the seal attached is the notary's seal, or that the handwriting signed thereto, is the proper signature of the notary.    Much ingenious reasoning has been urged before the court, to establish the invalidity of the protest, offered in evidence, upon the ground, that the seal of the notary does not contain the inscriptions pointed out by the act of 1801, ch. 86, sec. 7.    Without determining whether this would be important or necessary, had the protest been made by an officer of this State, it is only necessary to say, that the protest was made beyond the limits of the State, by a notary, in no manner bound to provide a seal of the peculiar designation, which might be required for our own officers. In 2 *Hill*, 228, the certificate of the notary was rejected, because it had, according to the common law, no seal attached to it, and because there was no proof of the law of the State where the protest was made, that it was sufficiently authenticated.    But we could not reject this protest upon the ground urged, without, at the same time, subjecting all protests, wheresoever made, of even foreign bills, to the same rule.

But it is further urged, that the protest is inadmissible and insufficient to prove demand and notice, upon the ground that notice was not sent to the defendant at his nearest post office. The notice was sent to *Upper Marlborough*, to which office it is in proof, that the defendant had directed the witness to send him letters; at which place, it is proven, he had an agent, who would deliver letters there ariving to him.    It is also proven, that he received several letters at a post office four miles nearer his residence.    The defendant had, therefore, from the

proof, two post offices, to either of which it would have been sufficient to have sent the notice of protest; he could not say that due diligence had not been used, when letters were sent to the post office where the defendant had directed letters from his copartner to be sent, and from which direction, it is reasonable to presume, he would, having an agent in the town, more readily and speedily receive them, than if sent to the post office nearest to him.

The third exception raises the question, whether a demand ought to have been made on both the drawers of the note, who were partners, and who had dissolved their partnership, and given notice of such dissolution in a paper printed in the city of *Washington?* It might be sufficient to say, that this dissolution had, by no evidence in the cause, been brought home to the knowledge of the holder of the note. But we do not desire to determine the question on this ground, because we are clearly of opinion, that a demand on one of the partners was sufficient, as each partner represents the partnership. Before a dissolution, it clearly would not be necessary to make a demand on both; *Story Prom. No.*, 285, nor could it be necessary after a dissolution, as the partnership, as to all antecedent transactions, continues until they are closed.

The above views dispose of all the questions presented for our consideration in the appeal No. 10, and in No. 6, the second appeal; except the questions arising on the fifth and sixth exceptions in No. 6.

We cannot perceive that the introduction of the agreement, between *Sasscer*, *Wall, Dixon* and *Crowley*, into the case, (by which the latter undertook to pay certain liabilities of *Sasscer* and *Wall*, among the rest the note in controversy,) should exclude *Sasscer* from being a witness. If *Sasscer* was compelled to pay the amount of the note, his remedy against *Crowley*, the defendant, would be by an action on the agreement, just adverted to. By paying the judgment, the witness would not be entitled to an assignment of the judgment, as his relation to the plaintiff in such judgment was that of a principal, and not a security for *Crowley*.

The only variance alleged in the sixth exception, to which we need advert, is, that the nar alleges the note upon which the suit was brought, to have been "made at the county aforesaid," when the note shows, that it bore date at the city of *Washington;* and it is insisted, that the declaration should have averred, that the note "was made at the city of *Washington,* to wit, at the county aforesaid." In *Robert vs. Harnage,* 2 *Lord Ray,* 1043, a bond dated at *Fort St. Davids,* in the *East Indies,* was declared upon as a bond made at *London.* It was decided, that there was a variance. The same decision was made in *Mostyn vs. Fabrigas, Cowp.,* 176. These decisions appear to have been followed in *New York* and *Massachusetts.* 13 *John. Rep.,* 450. 5 *Pick.,* 412. There have, however, been contradictory decisions. In *Houriet, et al., vs. Morris,* 3 *Campb.,* 303, it was decided, that the contract evidenced by a promissory note is transitory, and the place where it purports to be made is immaterial, and it was held to be no variance; and the same doctrine is laid down in 1 *Stephen's N. P.,* 773, 774. But that when the place of payment was stated in the body of the note, it made a material part of the instrument. *Roche vs. Campb.,* 3 *Camp. N. P.,* 248. *Chitty,* in his forms of pleading, adopts the doctrine of *Lord Ellenborough,* and his forms conform to those decisions. 2 *Chitty's Plead.,* 115, 116, 117, 118; 9 *Am. Ed.* In *Chitty on Bills,* 582, 9*th American edition,* the decision in 3*rd Camp.* is referred to; and it is there said, that inland bills, although they bear date at a particular place, may be alleged to have been made anywhere in *England* or *Wales.* *Bailey on Bills,* 380, is cited by *Chitty* for this position. In bills drawn and payable in countries where the currency differs from our own, there is much reason for maintaining, that it was necessary to aver the place where the bill was drawn; accordingly, it has been decided, that where a bill was drawn in *Dublin* in *Ireland,* for *Irish* currency, and the declaration stated, that the bill was drawn at *Dublin,* to wit, at *Westminster, &c.,* without alleging that *Dublin* was in *Ireland,* nor stating the bill to be for *Irish* currency, there was a variance, inasmuch as the bill must be taken to be drawn for *English* currency. 2 *Barr. and Ald.,*

301. But *Mr. Chitty* intimates, that a different decision might be made since the act assimilating the currency between *Great Britain* and *Ireland*. 1 *Chit. Plead.*, 581.

In this conflict of authority, we feel ourselves justified in adopting as a rule, that authority which occurs to us as the most reasonable. In 13 *John.*, 450, although the court say, they might feel themselves bound by the cases, yet they intimate that their opinions were against the position, that such an allegation was a variance. The place where a note is dated is clearly immaterial; and if it be conceded, that in inland bills, no matter where dated, the allegation may be made, that such bill was made in any county where the suit is brought, it is difficult to perceive a reason, why in a foreign bill the same principle should not prevail, unless in consequence of the difference of currency between the currency of the country where the bill is drawn, and where it is sued upon, should render the true statement of the date necessary, to avoid a variance.

We are of opinion, there is no variance, and believe the court below were right in their decision on the sixth bill of exceptions.

The result of the above views is, that the decision of the court, in both appeals, should be affirmed.

JUDGMENT AFFIRMED.