HENRY STAYLOR *vs.* RICHARD BALL AND WARREN WILLIAMS.

PROMISSORY NOTES: PRESENTMENT, DEMAND AND NOTICE.—The obligation to make a presentment and demand of payment of the maker of a note extends to the case of a resident within the State (if known to the holder) as well as to a resident of a city.

A personal demand and personal notice being dependent upon the knowledge of the holder of the place of residence or business of the maker and endorser, the Court correctly refused to grant prayers which required a demand of payment of the maker at his residence or place of business, and

personal notice of non-payment to the endorser, or. notice at his place of business without regard to the fact whether the holder or Notary had knowledge of the residence of the maker or endorser respectively, or used due diligence to ascertain the same.

———: ———: WAIVER OF NOTICE is often more certainly indicated by acts than by words.

EVIDENCE : NOTARY'S CERTIFICATE OF PROTEST.—By the Code, Art. 14, sections 6 and 7, the protest itself is *prima facie* evidence of the facts stated therein.

EVIDENCE : PROVINCE OF COURT AND JURY.—What constitutes due diligence upon any state of facts agreed on, or to be proved by the jury, is a question of law for the Court.

NOTICE TO ENDORSER.—An endorser is entitled to strict notice, by which is meant that reasonable diligence shall be employed and reasonable efforts made to give it.

The Notary must resort to all proper parties to the note within his reach ; he must apply to the maker of the note if he is known and within reach.

PROVINCE OF COURT AND JURY.—The question of due diligence in this State must be determined by the Court.

APPEAL AND ERROR : PRAYERS AND INSTRUCTIONS TO THE JURY.—This Court has repeatedly held that although there was error in the instruction of the Court below, such error will not be ground for reversal if it appear that the party appealing was not injured thereby.

APPEAL from the Court of Common Pleas for Baltimore City.

The appellees, as endorsees, sued the appellant, as endorser and payee, of a promissory note. The defendant pleaded several pleas, the second of which was that he had not due notice of the dishonor of the note, and the fourth was that no legal demand of payment was made upon the makers.

*Exception.*—After the trial of the cause the plaintiffs to maintain the issues on their part joined, offered the note and protest in evidence, and proved by *Mr. Stockbridge* that some time after the maturity of the note, offered in evidence in this case, it was placed in his hands by the plaintiffs for collection, as their attorney, and that he had an interview with Staylor concerning it ; that Staylor

admitted the genuineness of the note and his endorsement, and said he had in his possession and would like to return to the plaintiffs in settlement the machine for which the note was given ; that if they would take it at a fair price he would pay the difference between such price and the face of the note ; that witness said he would communicate with the plaintiffs ; that he did so communicate, and the plaintiffs assented to receive the machine on certain prescribed conditions, which the defendant neither accepted nor declined, but did not comply with ; that at the first interview spoken of Staylor recognized his liability on the note and promised to pay it, and said in substance that as times were the machine was dead stock or useless to him, and he wished the privilege of returning it in part payment of the note, and would, if permitted to do so, pay the balance in cash, and that he made no objections to the protest, and said nothing of any failure to give him notice of the protest of the note.

The plaintiffs also proved by *Lewis Sutton*, Notary Public, that the note was placed in his hands for protest by C. R. Coleman, Cashier of the Mechanics' Bank ; that he could not find the place of business or residence of either makers or Staylor ; that he made inquiry and endeavored to learn the residence or place of business of the makers and endorsers ; that he consulted the Baltimore City Directory and could find neither therein ; that neither Henry Staylor nor Pohl & Spreckelmeyer were in the Directory ; that he afterwards inquired at the Mechanics' Bank, from which he received the note, but could get no information with reference to them there ; that he had a number of notes to protest on the day the note in question matured, and that he pursued the course mentioned in the protest. The making and endorsement by Staylor of the note were admitted.

The plaintiffs having closed their testimony, the follow-

ing evidence was offered on behalf of the defendant: It was proved by several witnesses that at the time the note matured, Pohl & Spreckelmeyer, makers, carried on a large steam planing mill at the corner of Cathedral and John streets, in Baltimore city, and had been doing business there for more than a year before the maturity of the note; that they did an extensive business and were known to the business community, particularly to builders, and that Pohl & Spreckelmeyer resided in Baltimore city. That Staylor for the last eight years carried on the hardware business at store No. 95 Harrison street, near Gay, in Baltimore city; that he did an extensive business and trade in builders' hardware; that he never had a sign bearing his name, but the name over his door was "McAleer," and had always been; that he was accustomed to receive letters through the Post Office, addressed to himself in his own name as well as in the name of "McAleer & Co.;" and that a letter addressed to him, or a notice of this protest as was said to be, would, in the regular course of business, be received by him the same day it was mailed or the following morning; that Staylor resided in Baltimore city; that his store was open for business on business days during the year; that notices had at different times been brought to him from the Post Office as well in his own name as in that of McAleer; that the custom in Baltimore city was to give personal notice of the protest if possible to endorsers, and make personal demands for payment if possible on makers where they have known places of business in the city; or if they have not such and cannot be found, to make inquiry of the bank from which the note was received, and to examine the City Directory, and if this does not disclose the residence or place of business of the parties, to make demand in some public place, usually the Post Office and Merchants' Exchange, and to address the notices for the endorsers to them, and to deposit them so addressed in the city Post Office.

Staylor *vs.* Ball & Williams.

W.hereupon the defendant prayed the Court to instruct the jury as follows.

Defendant's first prayer.—The defendant prays the Court to instruct the jury that if they believe from the evidence that at the time the note in question matured, the makers had a recognized and known place of business in the city of Baltimore, and were generally known as conducting an extensive business in steam planing; and shall futher find that on the day of said maturity the Notary Public did not demand payment of said makers, or either of them, of said note, or call at their place of business to make such demand, they must find a verdict for the defendant, although they should believe that the Notary made a demand as stated in the protest.

Defendant's second prayer.—That if the jury believe from the evidence that on the day said note matured, Henry Staylor, first endorser, had a known and recognized place of business in the city aforesaid, and that his store was of widely extended business reputation in said city, and that the Notary Public did not call and notify him personally of the demand and non-payment of such note by the makers, or leave a notice to that effect at the defendant's place of business, and that said place of business was open for the transaction of business on every business day during the year; and that, by the custom of Baltimore city, Notaries are expected to notify endorsers at their places of business or residences, if any they have, they must find for the defendant, although they should believe that notices were sent through the Post Office, as mentioned in the protest.

Defendant's third prayer.—That if the jury believe from the evidence that the defendant, subsequently to the maturity of the note, and when it was placed in the hands of an attorney for collection, offered to compromise or accommodate the amount claimed as due on the face of the note; and should further find that such offer to compromise or

accommodate was not accepted, that such offer on the part of the defendant is no waiver of his right of defence, as endorser, unless the jury shall further find that at the time of the offer, as above, the defendant knew of his rights of defence, and expressly waived or abandoned them.

Defendant's fourth prayer.—That if the offer, as aforesaid, was made and not accepted, such offer is not evidence to go to the jury under the declaration in this case.

Defendant's fifth prayer.—That if the jury believe from the evidence that the notice purporting to have been sent to defendant, as endorser, was not directed to the defendant at his place of residence or Post Office, and that the protest does not state such fact of direction, or state any place of direction of notice to the first endorser, they must find for the defendant.

Defendant's sixth prayer.—That if the jury should believe from the evidence that the notice purported to have been sent to the defendant did not contain a true description of the note, an assertion that it had been duly presented to the makers at maturity and dishonored, and that the plaintiff would hold and look to the defendant for reimbursement or indemnity, they must find for the defendant.

Defendant's seventh prayer.—That there is no evidence of a notice of the dishonor of the promissory note mentioned in this action, describing the note, asserting that it had been duly presented to the makers at maturity and dishonored, and that the defendant would be held or looked to for remuneration or reimbursement.

Defendant's eighth prayer.—That if the jury believe the makers and endorsers (as was offered in evidence) had known and recognized places of business in the city of Baltimore, and that the Charles R. Coleman, one of the endorsers, lived in the same city, notice of the protest must be personal if possible.

Staylor *vs.* Ball & Williams.

But the Court below (KING, J.,) rejected all of said prayers, and instructed the jury as follows :

The Court instructs the jury in this case that if they shall find from the evidence that the promissory note offered in evidence was drawn by Pohl & Spreckelmeyer, co-partners, and that they were residents of the city of Baltimore at its maturity, and that the said note was endorsed by the defendant, also a resident of the city, at its maturity, and that upon the maturity of said note it was not paid, and that it was delivered by the Cashier of the Mechanics' Bank of Baltimore to Lewis Sutton, Notary Public, for protest ; and that the said Notary used reasonable diligence to ascertain the residences or place of business of the drawers of said note and could not ascertain the same ; and if they shall also further find from the evidence that the said Notary did also use reasonable diligence to ascertain the residence or place of business of the defendant, the endorser, and could not ascertain the same, and that on the same day he addressed a written notice to the defendant, informing him of a demand on the said drawers and of non-payment of said note, and that said defendant was held responsible for the payment of the same, and directed said notice to the defendant and deposited the same in the Baltimore Post Office on the same day as set out in the protest offered in evidence, that then the plaintiffs are entitled to recover.

The Court further instructs the jury that if they find from the evidence that the said Notary did not use reasonable diligence to ascertain the residences or place of business of the makers of said note, if residents of the said city at its maturity, then no legal demand in this case has been made on the makers of said note, and the plaintiffs are not entitled to recover, unless they shall further find from the evidence that subsequently to the protest of said note the defendant, the endorser, promised the plaintiffs or their

attorney to pay the amount of said note, with a knowledge of the fact that no legal demand had been made on the drawers for payment.

The Court hereby further instructs the jury that if they shall find from the evidence that the said Notary did use reasonable diligence to ascertain the residences or place of business of the makers of said note as set out in its first instruction, but did not use reasonable diligence to ascertain the dwelling or place of business of the defendant, that then the notice deposited in the Post Office as aforesaid is not sufficient to hold the defendant, and the plaintiffs are not entitled to recover, unless the jury shall further find from the evidence that the notice so deposited in the Post Office as aforesaid did actually reach the defendant on that or the succeeding day, or unless they shall find from the evidence that subsequently to the day of the protest of said note, the said defendant promised the plaintiffs or their attorney to pay the amount of said note, with a knowledge of the fact that notice of non-payment had not been regularly given to him.

From this action of the Court below the defendant appealed, and the cause was argued in this Court before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*J. Randolph Quinn* for the appellant.

The appellant contends that the judgment in this case should be reversed, and assigns as a reason therefor :

1st. That the Court below erred in rejecting the appellant's prayers 1, 2, 5, 6, 7 and 8, because there was no evidence such as is required by law to fix the liability of an endorser; that in fact the evidence showed failure of diligence in that respect. Endorsers should have notice of demand and non-payment; proof of notice must be clear; endorsers

in same town entitled to personal notice; the protest being only *prima facie* evidence, is not of itself sufficient proof. *Day vs. Lyon*, 6 *H. & J.*, 140. *Moore vs. Hardcastle*, 11 *Md. Rep.*, 486. *Bell vs. Hagerstown Bank*, 7 *Gill.*, 229–231. *Graham vs. Sangston*, 1 *Md. Rep.*, 66–67. *Woodworth vs. Bank of America*, 19 *Johns.*, 391. *Smedes vs. Bank of Utica*, 20 *Johns.*, 372. *Story on Prom. Notes*, 235, 322, 348. As to putting notices in Post Office, see *Farmers' Bank vs. Bowie*, 4 *Md. Rep.*, 495. *Brailsford vs. Williams*, 15 *Md. Rep.*, 150. *Ransom vs. Mack*, 2 *Hill*, 587. *Halliday vs. Martinett*, 20 *Johns.*, 168.

2nd. That the Court below erred in rejecting the appellant's prayers 3 and 4. Waiver of demand and notice must be done understandingly. Failure to accept the defendant's (appellant's) offer conferred no rights on the plaintiffs, (appellees,) which they did not possess before such offer, but left the parties in their original condition. *Cayuga Bank vs. Dill*, 5 *Hill*, 303. *Agan vs. McManus*, 11 *Johns.*, 180. *Griffin vs. Goff*, 12 *Johns.*, 423. *Norris vs. Lain*, 16 *Johns.*, 151.

3rd. That the Court below erred in its first instruction. Diligence is a question of law. *Sasscer vs. Farmers' Bank of Maryland*, 4 *Md. Rep.*, 409. *Bell vs. Hagerstown Bank*, 7 *Gill.*, 231. *Schofield et al. vs. Bayard*, 3 *Wendell*, 488. The whole of this instruction being based on the question of diligence was improperly given to the jury.

4th. The second instruction is bad, for the reason assigned in the 3rd point; and the Court also erred in assuming there was evidence that the defendant promised to pay the plaintiffs, as in said instruction stated—the evidence being that the defendant offered to pay conditionally—not absolutely—and there was no evidence that the conditional offer was accepted by the plaintiffs. On the contrary, the plaintiffs desired to annex conditions of their own to the defendant's offer.

That Courts cannot assume facts is well settled. The appellant refers to authorities cited under his 2nd point, as elucidating this 4th point.

5th. That the 3rd instruction is bad for the reason assigned by the appellant in his 3rd and 4th points.

*H. Stockbridge,* for the appellees.

The appellees do not contend that all the propositions contained in the prayers of the appellant are bad as abstract statements of law ; but they submit that some of them are not sustained by any facts proven in the case, and others had a tendency to mislead the jury, and it was competent for and the duty of the Judge to lay all aside, under such circumstances, and to give the jury instructions which would not mislead, and which covered all the points in controversy. *Mutual Safety Ins. Co. vs. Cohen,* 3 *Gill,* 459. *Clements vs. Smith's Admrs.,* 9 *Gill.,* 160. *N. Y. Life Ins. Co. vs. Flack,* 3 *Md. Rep.,* 341. *Key vs. Dent,* 6 *Md. Rep.,* 142.

The defendant relied only upon his second plea, viz : that he " had not due notice of the dishonor of said promissory note as alleged ;" and the only question in controversy at the time of the giving of the instructions were : 1st, the technical sufficiency of the notice of protest, and 2nd, if sufficient, the force of the subsequent promise to pay.

The plaintiff contended, and contends here, that the notice given to the endorser was sufficient to render him liable to his endorsee. It is not to be expected that in large cities Notaries Public can have a personal acquaintance with all the merchants doing business in such cities. And if promissory notes are made without any fixed place of payment expressed upon such notes, the Notaries can only be required to use earnest diligence and conform to the " custom of merchants" for the discovery of the endorsers and the service of notice.

In this case the custom of merchants relative to protests in the city of Baltimore, was strictly complied with. And the notice sent to the appellant would, according to the appellant's testimony, reach him on the day of protest or the following morning. The appellees submit that this was due diligence and sufficient notice.

The general rule of personal demand upon the maker and personal notice of dishonor to the endorser is well established ; but the exception, which, under certain circumstances, permits the sending of a notice by mail, is equally so. It was clearly declared to be the law of Maryland, in *Walters & Harvey vs. Brown,* 15 *Md. Rep.,* 285 ; and if any doubt could have existed as to the sufficiency of the demand and notice in the present case before that decision, there certainly can be none since.

But this case is stronger than that of *Walters & Harvey vs. Brown,* in that, in this case, the proof establishes mercantile usage for the demand and sending of notices by mail, and the strict conformity of the Notary to the established usage. *In Gindeat vs. Mechanics' Bank,* 7 *Ala.,* 324, *Chicopee Bank vs. Eager,* 9 *Met.,* 583, and other cases, such usage, although the usage of a single bank, has been held sufficient to bind the maker of a note made payable at such banks. Much more then would a usage like this, adopted by all the banks of a great commercial city like Baltimore, bind persons doing business in such city and through those banks.

But after maturity, the endorser " recognized his liability on the note and promised to pay it." This promise was sufficient to bind him to the payment, for it was evidence of protest for non-payment, and that notice of dishonor had been given. *Gibbon vs. Coggon,* 2 *Camp.,* 188. *Beck vs. Thompson,* 4 *H. & J.,* 531. *Shephard vs. Spates,* 4 *Md. Rep.,* 400.

This promise was made while the promisor had in his

13    v. 24.

possession the merchandise for which the note was given.
He was therefore in fact the debtor, and his promise could
not in any event be regarded as a *nudum pactum*. It is a
stronger case than that of an endorser who has received
from the maker of a note security for his liability; and
even in that case, it is well settled that the endorser can-
not avoid payment by the plea of want of notice of dishonor.
And this distinction stands in sound reason as well as on
authority, for the neglect to give notice cannot have ope-
rated to his injury.

From these views it follows, that it is immaterial whether
the Court did or did not err in submitting the question of
reasonable diligence to the jury. Proper diligence having
been exercised, the Court's ruling upon that point must
have been against the defendant, and if instead of ruling
thus against the defendant, the Court permitted him to
attempt to satisfy the jury that proper diligence had not
been used, it was an error which could not prejudice the
defendant, of which he cannot complain, and for which he
cannot ask a reversal of the judgment. It was an error in
favor of the appellant. *Anderson vs. Garrett*, 9 *Gill.*, 131.
*Keener vs. Harrod, &c.*, 2 *Md. Rep.*, 63. *Pratt vs. John-
son*, 6 *Md. Rep.*, 407. *Marshall vs. Harwood*, 7 *Md. Rep.*,
466. See cases collected in 2nd *Md. Digest, p.* 23, *pl.* 131.

Bowie, C. J., delivered the opinion of this Court.

The appellees as endorsees, sued the appellant as payee
and endorser of a promissory note dated Baltimore Nov. 8,
1860, drawn by Pohl & Spreckelmeyer at four months for
$367, for value received.

The defendant offered a series of eight prayers, all of
which were rejected, and instructions given in lieu thereof
by the Court, to the rejection and granting of which re-
spectively, the defendant excepted, and prayed an appeal.

The first, second and eighth prayers refer to the demand

on the maker, and notice of dishonor to the endorser, necessary to make the latter legally responsible.

The first and second prayers require a personal demand of the maker, and personal notice to the endorser, of demand and refusal to pay, if the jury believe the maker and endorser respectively, had a known and recognized place of business in Baltimore, and were generally known, and that by the custom of Baltimore City, Notaries are expected to notify endorsers at their places of business or residences, if any they have, without reference to the knowledge of the holder of the note or Notary Public, of the residence or place of business of the maker or endorser, or of any want of diligence on their part, to obtain such information.

The defendant's third prayer asserts, that an offer to compromise not accepted, is no waiver of the defendants right of defence as endorser, unless the jury shall further find that at the time of the offer as above, the defendant knew of his rights of defence and *expressly* waived or abandoned them.

4th. That if the offer as aforesaid was made and not accepted, such offer is not evidence to go to the jury under the declaration in this case.

The 5th and 6th refer to the form and sufficiency of notice of protest. They affirm, if the notice purporting to be sent to the defendant as endorser, was not directed to him at his place of residence or Post Office, and the *protest* does not state such fact of direction, or any place of direction of notice to the first endorser, or if the notice did not contain a *true description of the note,* the jury must find for the defendant.

The 7th declares, there is no evidence of a notice of dishonor of the note mentioned in this action, asserting it had been presented to the makers at maturity, and dishonored, and that defendant would be held responsible.

The 8th affirms that if the makers and endorsers as afore-

said had known and recognized places of business in the city, and that Charles R. Coleman, one of the endorsers, lived in the same city, notice of the protest must be personal, if *possible.*

As to notes payable without reference to any particular place, the general rule is, that a demand must be made of the maker of the note, or at his residence or place of business, (if he has one or it is known) within the city, or place where the note is payable, in order to bind the endorser. *Story on Prom. Notes, sec.* 235.

This rule necessarily implies knowledge on the part of the holder, of the place of residence or business. Accordingly, where the circumstances are such as to render it difficult to acquire this knowledge, the rule is relaxed. CHAN. KENT *Com. vol.* 3, *sec.* 41, *p.* 95, says, "There is a great deal of perplexity and confusion in the cases on this subject, arising from refined distinctions and discordant opinions, and it becomes very difficult to decide what is precisely the law of the land as to the sufficiency of the demand upon the maker of the note or the acceptor of the bill."

If there be no particular and certain place identified and appointed, other than a city at large, and the party has no residence there, the bill may be protested in the city on the day, *without inquiry*, for that would be an idle attempt. The general principle is, that due diligence must be used to find out the party and make the demand, and the inquiry will always be whether under the circumstances of the case due diligence has been used. * * * * * * The presumption is, that the maker resides where the note is dated, and that he contemplates payment there. But it is presumption only, and if the maker resides elsewhere within the State, when the note falls due, and that be *known* to the holder, demand must be made at the makers place of residence. *Vide Note* 1, *Story on Prom. Notes,* 281.

"If the maker has no known residence or place where a

presentment can be made, then the holder will in like manner be excused from any presentment." *Story on Prom. Notes, sec.* 237, *note 4,* and authorities there cited. These general principles were recognized and adopted by this Court in the case of *Nailor vs. Bowie,* 3d *Md. Rep.,* 256, *and Sasscer vs. Whitely & Stone,* 10 *Md. Rep.,* 102, 104.

The obligation to make a presentment and demand of payment of the maker of a note, extends to the case of a resident within the State, (if known to the holder) as well as to a resident of a city, but in the case in 10 *Md. Rep.,* 102, 104, the demand at the Post Office, of a note dated at Baltimore was deemed sufficient upon proof, that the Notary was unable to ascertain where the maker resided, although the defendant proved he had lived for forty years near Upper Marlborough, and had for the last thirty years extensive business transactions both with commission houses and banking institutions.

A personal demand and personal notice being dependent upon the knowledge of the holder, of the place of residence or business, of the maker and endorser, it is clear from these authorities, the Court correctly refused the 1st, 2nd and 8th prayers of the defendant, which required a demand of payment of the maker, at his residence or place of business, and personal notice of non-payment to the endorser, or notice at his place of business, without regard to the fact, whether the holder or Notary had knowledge of the residence or place of business of the makers or endorser respectively, or used due diligence to ascertain the same.

To the third prayer of the defendant, requiring the jury shall find that at the time the offer of compromise was made, the defendant knew of his rights of defence, and *expressly waived* and abandoned them, or such offer, etc. was no waiver, was too broad a proposition, as waiver is often more certainly indicated by acts than by words.

The conduct of the defendant, which included all that transpired at his interview with the plaintiffs' counsel, was material and proper evidence to go to the jury, under the second issue in the case, the possession of the property for which the note was given was circumstantial evidence that the endorser was indemnified to some extent for his liability, and if he had been substituted for the makers, by his own act, he could not retain the thing sold, and refuse to pay the price. We do not perceive any evidence to warrant the fifth prayer of the defendant. It proceeds upon an hypothesis directly contrary to the evidence. It was proved the defendant resided in the City of Baltimore, and had a place of business there, where he received letters addressed to him through the Post Office, and that a letter addressed to him would, in the regular course of business be received by him the same day it was mailed, or the following morning.

The Notary testifies that on the same day of the protest, he addressed written notices to the drawers and endorser of the note, informing them it had not been paid, payment thereof having been demanded and refused, and they would be held responsible therefor, and dropped notices in the Baltimore Post Office, directed to the drawers and first endorser, after diligent search and inquiry, and failure to find them. Thus it appears the notice was directed to the defendant, and put in the Post Office of the city in which he resided and did business, and from which he usually received letters the same day or next morning.

The 6th prayer assumes a discrepancy between the description of the note sued on, and that mentioned in the protest, etc., no such variation appears in the testimony, and therefore its rejection was proper.

The 7th instruction amounts to a declaration, that there is no evidence of notice to the defendant of demand, nonpayment, etc., in the case.

Staylor *vs.* Ball & Williams.

The protest itself was *prima facie* evidence of the presentment of the note for payment and its non-payment; and that notice of such presentment and non-payment were given the parties in the manner therein stated. Code, Art. 14, secs. 6 and 7. All of which was confirmed by the evidence of the Notary Public.

It appears from this summary of the several prayers of the defendant they were not supported by the law or the evidence, and therefore properly rejected.

The instructions given by the Court in lieu of those rejected are objected to, because they submitted to the jury to find among other facts "whether the Notary used reasonable diligence to ascertain the residences or places of business of the drawers of the note and endorser, and could not ascertain the same," which, it is contended, it was the province of the Court to determine.

In *Whitridge vs. Rider*, 22 *Md. Rep.*, 548, it was held by the Court as follows : " What constitutes due diligence upon any state of facts, agreed or to be found by the jury, is a question of law for the Court, and it is very difficult to lay down any general rule applicable to all cases. Each depends much on its special circumstances. This, however, can be stated generally, that if the holder does not know where the endorser or other party to be notified lives, but can inform himself by reasonable endeavor or diligent inquiry, he must do so." An endorser is entitled to strict notice, by which is meant, " that reasonable diligence shall be employed and reasonable efforts made to give it." 1 *Parsons on Bills & Notes*, 490, note *a*. 11 *Md. Rep.*, 486. 1 *H. & G.*, 248. 15 *Md. Rep.*, 285. The Notary must resort to all proper parties to the note within his reach; he must apply to the maker of the note if he is known and within reach.

The evidence in this cause shows the Notary inquired of the Cashier of the Mechanics' Bank, the holder of the

note, and examined the City Directory to ascertain the residence and place of business of the drawer and endorser, (the defendant) and could obtain no information of either; that after diligent search and inquiry, and failing to find them, he presented the note and demanded payment at the Baltimore Post Office and Merchants' Exchange, and found no one to pay it; he then addressed written notices to the drawer and endorser informing them, etc., and dropped the notices in the Baltimore Post Office, directed to the drawer and first endorser, and mailed notices under covers for other endorser directed to N. F. Palmer, Esq., New York. It was further proved in the cause that the endorser did business under the name of "McAleer;" that he received letters through the Post Office addressed to himself in his own name, as well as in the name of "McAleer & Co.," and a letter addressed to him, or a notice, would, in the regular course of business, be received by him the same day it was mailed or the following morning, and that it was the usage or custom in Baltimore city if the makers and endorsers cannot be found, to make inquiry of the bank from which the note was received, and examine the City Directory, and if that does not disclose the place of business or residence of the parties, to make demand in some public place, usually the Post Office and Merchants' Exchange, and to address the notices for the endorsers to them and deposit them so addressed in the city Post Office. The Notary having complied not only with the general requisitions of mercantile practice, but the local custom of the city, as well as the demands of the law, in exercising reasonable diligence and care to ascertain the residences and places of business of the maker and endorsers, and make presentment and demand payment, and in default thereof to give notice to the endorser, the Court, if it had been asked, must have held and instructed the jury, if they be-

lieved the evidence, that the plaintiff had used due diligence in those respects.

In this State, since *Jones vs. Wilmot*, 1 *H. & J.*, 477, it has been held to be the province of the Court to determine whether or not due diligence has been used by the holder of the note or bill to recover the money from the maker or acceptor, so as to fix the liability of the endorser; yet the same case decides that in the absence of such diligence the endorser may recover if it appears that the endorser subsequently promised to pay the amount of the note. This Court has repeatedly held that although there was error in the instruction of the Court below, such error will not be ground for reversal if it appears the party appealing was not injured thereby. 3 *Gill*, 459. 4 *Gill*, 406. 8 *Md. Rep.*, 208, 274. *Hanson vs. Campbell, lessee*, 20 *Md. Rep.*, 233. In the present case the instructions given by the Court submitted to the jury to find whether the plaintiff had used due diligence in making demand of the maker and giving notice to the endorser of non-payment and dishonor; and also whether the defendant, in the absence of knowledge of the omission to make such demand and give such notice, had promised to pay the debt. The jury finding for the plaintiff must have found the facts enumerated in the bill of exceptions to be true upon one hypothesis or the other; if they found upon the first hypothesis they arrived at the same conclusion of law which the Court would have reached, and should have directed the jury to be sufficient proof of due diligence if they believed the evidence on that point; if they found the promise subsequent, with knowledge, etc., they found such facts as rendered the question of diligence.immaterial. So that in no aspect was the defendant injured by the instructions given.

The Court below in the instructions granted gave the defendant the benefit of all want of knowledge of non-pre-

sentment and non-payment, if such existed, by requiring the jury to find his promise to pay the amount of the note, was made with a knowledge of the fact that no legal demand had been made on the drawer for payment before it should operate as a waiver of notice.

In the absence of reasonable diligence to find the residence or place of business of the maker and endorser, then the jury were required to find actual notice or a promise to pay, with knowledge of the fact that notice of non-payment had not been regularly given. Every precaution seems to have been taken to inform the jury of the facts necessary to be found to entitle the plaintiffs to recover, except the omission to define what was due diligence in law on the part of the Notary. This, we have seen, not prejudicing the defendant, is no cause for reversal.

*Judgment affirmed.*

(Decided March 13th, 1866.)