(Decided June 20th, 1866.)

---

JOHN WILLIAMS & JOHN HOOGEWERFF *vs.* W. R. BRAILSFORD.

BILLS OF EXCHANGE AND PROMISSORY NOTES: NOTICE OF DISHONOR: EVIDENCE: RESIDENCE,—PROOF OF.—It was decided on a former trial of an action by the endorsee against the drawer of a bill of exchange, that a letter press copy of a letter from the acceptor to the drawer, notifying him of the dishonor of the bill was admissible in evidence and sufficient; but that the evidence then presented was not sufficient to prove the mailing of the letter.

At the second trial of the cause under a *procedendo*, in the absence of the witness who testified as to the mailing of the letter at the first trial, and in order to lay a foundation for the admission of secondary proof from the record of the former trial, it was proposed to prove by reputation and hearsay that the witness on the first trial formerly resided in Maryland, but for the last two years he had not resided in this State, and could not be had as a witness upon the last trial, and that his testimony could not otherwise have been procured, which offer was made in

Williams & Hoogewerff *vs.* Brailsford.

connection with the testimony of the clerk of the acceptor, and former witness, that "it was the practice of the witness, the clerk, to mail letters left on the desk of his employer when so directed by him, and not otherwise, and that he had no recollection of having mailed the particular letter referred to."—Held:

1st. That the testimony of the clerk was too uncertain and indefinite to authorize an inference or conclusion that the letter was in fact mailed by him.

2nd. That irrespective of the question as to the right to prove the residence of the witness at the first trial by reputation and hearsay, the evidence as given at the former trial, if in, would be insufficient in connection with the testimony of the clerk to prove the mailing of the letter in question.

3rd. That in view of such insufficiency of the evidence of the witness at the first trial, if in, the offers of proof as to his residence, as well as proof of the evidence given by him at the former trial, were properly rejected.

PRACTICE: EVIDENCE.—Where the testimony on both sides is closed, and under the rules of Court, the cause is ready for the prayers, and notice is given of further testimony to be offered when procured, which is objected to, it is within the discretion of the Court to refuse to receive the testimony when offered.

EVIDENCE, ADMISSIBILITY OF: INTEREST,—WITNESS DISQUALIFIED BY: ENDORSERS AS WITNESSES IN ACTION BY ENDORSEE *vs.* DRAWER.— Witnesses who were parties to the bill of exchange above referred to as endorsers were offered to charge the defendant, the drawer, with notice of its dishonor by the acceptors, or its equivalent, waiver of such notice, and thus to enable the plaintiffs to recover a judgment against the drawer, whose effects were held by virtue of an attachment as security for the amount.—Held:

That the special circumstances of the case were such as to create an interest in their favor which would exclude them from testifying.

RESIDENCE OF DEFENDANT.—A prayer assuming that in order to charge the defendant, the jury should find that he was a citizen of the State of Maryland at the time of the maturity of the bill, and had a place of business or residence in the State at that time, was properly rejected.

NOTICE OF DISHONOR AND PROTEST.—A bill was protested in Baltimore on the 25th of July, 1854; a letter mailed there on that day could have reached Charleston on the 27th; the defendant, the drawer, left Charleston on a visit to Baltimore, on the 28th. No notice was proved to have been mailed to him; none was left at his last, or then place of business,

or residence in Charleston, and neither ignorance of such place of busi--
ness or residence shown, nor inability to ascertain it by diligent inquiry.
HELD:

That under such circumstances, notice should have been left at 'the last
place of business or residence of the defendant in Charleston, and the
fact, that instead of a separate establishment of his own, he had his
business desk in the counting-room of another person, did not exempt
the plaintiff from this obligation.

APPEAL from the Superior Court of Baltimore city.

This was an action of *assumpsit* by the endorsee against
the drawer of a bill of exchange, brought on the 1st Janu-
ary, 1857, to recover the sum of $1,800.92, and is now in
this Court on a second appeal from the Superior Court of
Baltimore city, where it was tried on a *procedendo* from this
Court. The bill in question, was drawn by William R.
Brailsford on S. D. Tonge.

The questions for consideration under the first appeal, as
set forth in 15 *Md. Rep.*, 150, related to the notice of dis-
honor of the notice of the bill; and were :

1st. Whether a notice of protest, if in due time, from the
acceptor to the drawer, binds the latter in an action against
him by an endorsee.

2nd. Whether a letter-press copy of a letter written by
the acceptor to the drawer of the bill notifying him of its
non-payment, and offered in evidence by the plaintiff, was
sufficient to prove notice of the dishonor of the bill of ex-
change, notwithstanding the imperfections of the copy pro-
duced at the trial.

3rd. Whether there was sufficient evidence that the letter
from the acceptor to the drawer was mailed.

The first two of the above questions this Court decided in
the affirmative. And as to the third proposition, they say,.
" that the evidence offered for the purpose of showing that
the letter had been mailed was not legally sufficient."

The evidence offered by the plaintiffs on the first trial of this case to sustain this third proposition was the testimony of S. D. Tonge, the acceptor of the bill, who stated "that he wrote this letter to the defendant upon the day of the maturity of the bill of exchange, but cannot recollect that it was mailed by him, nor does he know whether it was mailed at all; that the custom in his office is to write the letters of the house, and leave them on his desk for his clerk to deposit in the post office; that he had correspondence with him, and conversation in reference to the non-payment of the drafts, and that Brailsford never complained to him that he had no notice of protest and non-payment."

This Court said that "this was not sufficient evidence of the mailing of the letter; that compliance with the custom was not fully proven; that the clerk, whose duty it was to put the letter in the post office, should have been called, or his absence accounted for."

The judgment rendered by the Superior Court in favor of the plaintiffs was, therefore, reversed, and the case sent back under a *procedendo.*

*First Exception.* At the September term, 1863, of the Superior Court of Baltimore city, (Martin, J.,) upon the second trial of this cause, the plaintiffs, to support the issue upon their part, gave in evidence by Talbot Wilson, that he was clerk of Samuel D. Tonge from 1850 to 1855, and was such clerk in July, 1854, that he was acquainted with the handwriting of S. D. Tonge & Co., on the draft now shown to him.

The handwriting of all the parties to the draft was then admitted.

The counsel for the plaintiffs, at this stage of the cause, stated to the Court that he proposed to follow up the testimony of said Wilson, by laying the foundation for, and offering secondary evidence of what had been sworn to by

S. D. Tonge at the former trial, and reported in 15 *Md. Rep.*, 150, and thereupon offered in evidence, subject to exceptions, the letter and testimony of Tonge, as taken from said reported case in 15 *Md. Rep.*; and then continuing the examination, the witness, Talbot Wilson, stated "that he was clerk in the house of S. D. Tonge & Co., from 1850 to 1855; that Tonge wrote the business letters of the firm, and Tonge generally carried his business letters to the post office; that when he did not do so he placed them on a desk or table in his office, and directed the witness to carry them to the post office, and that it was the practice of the witness to carry the letters to the post office when they were thus placed on the desk or table, and he was directed by Tonge to mail them.

On cross-examination the witness stated that he would not have put into the post office any letter he might have seen on said desk or table unless Mr. Tonge had told him to do so, and that he had no recollection of putting in the post office the letter in question to Brailsford.

For the purpose of laying the foundation for the secondary testimony aforesaid, as read from the record of the former case, the plaintiffs offered in evidence the returns of the sheriff to *subpoenas* issued for said Tonge, and the testimony of William R. Seevers, Talbott Wilson and Pendergast, who stated that they did not know where Tonge resided, but had heard he resided somewhere in the South. All of which testimony was objected to by defendant's counsel as inadmissible, and the objection was sustained by the Court. To this ruling of the Court below, the plaintiffs excepted, and this constitutes the first exception.

*Second Exception.* The plaintiffs further offered in evidence the commission, (subject to exceptions,) and also offered in evidence by William Crichton, that a letter mailed in Baltimore, on the 25th of July, would reach Charleston on

the 27th of July, and by Earlocker, a clerk of Barnum's hotel, that Brailsford arrived at said hotel on the 30th of July, 1854, and by Jno. M. Frazier, that Tonge does not reside in Baltimore, but resides, as witness is informed, and believes, in the State of Georgia, and such is Tonge's reputed place of residence among his family connections; that the witness has seen and read a letter from Tonge to his wife's mother, dated Bainbridge. The witness was then asked if he had said letter in Court, and said he had not, it was not written to him, but to his wife's mother. All this testimony was objected to by the defendants, and the objection sustained by the Court; whereupon, the plaintiffs excepted.

*Third Exception.* The plaintiffs further offered to prove by James Malcolm, the facts and matters testified to by S. D. Tonge, on the former trial of this cause, and whether the testimony as detailed in the record of appeal, did not contain a full and fair statement of such testimony. This was objected to and the objection sustained by the Court, and the plaintiffs excepted.

*Fourth Exception.* The Court then asked the plaintiffs' and defendant's counsel if they had closed. The plaintiffs' counsel stated he had no further testimony in Court, but would like to offer in evidence the letter of Tonge to his mother-in-law, which he expected to have in Court next morning. The defendant's counsel objected to offering further testimony, unless it was now in Court. The Court then directed counsel to have their prayers ready by the next morning, and adjourned the Court.

The plaintiffs' counsel on the next morning produced a letter as the one spoken of by Frazier, and asked to offer it in evidence, and the defendant's counsel objected under the 35th and 36th rule of Court, and the objection was sustained; to which ruling the plaintiffs excepted.

*Fifth Exception.* The following prayers were then presented by the plaintiffs :.

1. "If the jury shall find from the evidence that the bill of exchange upon which this suit is brought, was on the day of its date drawn by William R. Brailsford, the defendant, a citizen of the State of South Carolina, at Charleston, upon Samuel D. Tonge & Co., at Baltimore, in the State of Maryland, and was by said last named firm accepted, and if the jury shall further find from the evidence that said bill of exchange was not paid at maturity, although duly presented for payment to the said acceptors at Baltimore aforesaid, and that said bill of exchange has not been since paid ; and shall further find that said Brailsford was not a citizen of the State of Maryland at the time of the maturity of said bill, and who had no place of business or residence at said time in the State of Maryland—then the plaintiffs are entitled to recover in this case, although the jury shall find from the evidence that no notice of protest was served upon said defendant at Charleston aforesaid."

2. "If the jury find from the evidence that the defendant, Brailsford, left the city of Charleston on the 28th of July, 1854, for Baltimore, in the steamer Tennessee, and arrived in Baltimore on the 30th of July, 1854, before, in the regular course of mail from Baltimore city to Charleston, notice of non-payment and protest could have reached him, and was not in the State of South Carolina at the time when notice of non-payment and protest of said draft ought to have been received at Charleston, in due course of mail, and that said Brailsford had no regular place of business or residence in Charleston, and left no person in Charleston to attend to his business in his absence, then the plaintiffs are entitled to recover in this case, although the jury shall find that no notice of demand, non-payment and protest was duly served on the defendant.

And the defendant offered the following prayers :"

1. "That there is no legal evidence of notice to the defendant of demand upon, and non-payment of the draft in this case, shown by the protest offered in evidence by the plaintiff."

2. "That there is no sufficient evidence of notice of demand and non-payment given by the plaintiffs to the defendant, which will entitle them to recover in this action."

3. "That if the jury shall find from the evidence, that no notice was served upon the defendant, or left at his usual place of business or residence, that then the plaintiffs are not entitled to recover, and that the fact of his departure from Charleston to Baltimore upon the 28th of July, 1854, by the steamer Tennessee—if they shall so find it, is no excuse for the plaintiffs not having left the notice at his last place of business or residence."

4. "The defendant prays the Court to instruct the jury that the plaintiffs are not entitled to recover, because there is no evidence of notice to the defendant of a demand upon and refusal by the acceptor to pay the draft sued upon in this case as required by law."

The Court below, (MARTIN, J.,) rejected the prayers of the plaintiffs, and granted those of the defendant; and the Court also ruled out the testimony of A. O. Andrews and R. M. Butler, which had been read, subject to exception, it being admitted that they were partners of the plaintiff, Williams, in the house of Williams, Butler & Co., by which said bill was endorsed to the plaintiffs. The plaintiffs excepted to the exclusion of this testimony, and to the rejection of their prayers and the granting of the defendant's prayers, and this constitutes their fifth exception.

The cause was argued before BOWIE, C. J., and GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Thomas S. Alexander*, for the appellants:

It will not be necessary to trouble the Court with any dis-

cussion on the merits of the prayers submitted by the respec-
tive parties. The appellants claim a reversal of the judgment,
on the grounds:

1st. That Andrews and Butler were competent witnesses
for the plaintiffs.

2nd. That their testimony was sufficient to warrant the
jury in finding: 1. That the defendant had received due
notice of the dishonor of the bill. 2. That he had waived
his right to take advantage of the want of such notice.

1. The indorser is a competent witness for the holder in
support of his action against the drawer. 1 *Greenl'f Ev.*,
*secs.* 384 and 400. *Hunt vs. Edwards*, 4 *H. & J.*, 283.
*Buel vs. Gwinn*, *Id.*, 507.

The circumstance that one of the plaintiffs was a member
of the firm of Williams, Butler & Co., the indorser, at the
time of such indorsement, cannot render the other members
of the firm incompetent as witnesses for the holders of the
draft. The case would be different if the witnesses were
members of the firm of John Williams & Son, and continued
members thereof. But upon the proofs, it is to be assumed
that the firms were distinct and independent of each other
in their general transactions, and in reference to the bill
stood in the relation of indorser and indorsees towards each
other. That Andrews and Butler were originally liable as
indorsers on the draft, and had no interest whatever in the
firm of John Williams & Son, and have ceased to be inter-
ested in the firm of Williams, Butler & Co.

2. There is evidence besides that of the two witnesses be-
fore named, to show that the defendant left Charleston for
Baltimore on the 28th June, 1854. And from this event,
occurring so recently after the dishonor of the draft, and from
his declaration, previously made, that the drawees had given
him information of their inability to meet the draft, and of
his purpose to go on and see the drawees about it, the infer-

ence is fair that he had received notice of dishonor from them.

The promise made immediately after his return from Baltimore to pay the draft, and his frequent acknowledgments of his liability thereon, are evidence as well of due notice of dishonor, as of a waiver of all defence on the ground of failure of notice. *Beck vs. Thompson,* 5 *H. & J.,* 531. *Jones vs. O'Brien,* 26 *L. & E. Rep.,* 283. 3 *Kent's Com.,* 158, 159. *Day, et al., vs. Lyon,* 6 *H. & J.,* 140. *Berry, et al., vs. Crowley,* 4 *Gill,* 201. *Byles on Bills,* (348,) 500. 2 *Parsons on Notes and Bills,* 467. *Chitty on Bills,* 747, (669.) *Baskins vs. Wilson,* 6 *Cow.,* 471, 474.

*I. Nevett Steele* for the appellee:

1st. The evidence offered in the first exception to prove that Tonge resided at the South, was properly rejected; because, even if the fact of such residence would have been a sufficient ground for the introduction of the evidence given by Tonge at the former trial, which is not conceded, it was not competent to prove that fact by reputation and hearsay, especially in the face of the sheriff's return that Tonge was "summoned" to the very term of the Court at which the trial took place; and because the evidence so formerly given by Tonge, would not be sufficient, even when connected with the testimony of his clerk, Talbot Wilson, to prove the mailing of the letter to the defendant, which the plaintiffs proposed to rely upon as proof of notice of demand and non-payment of the bill of exchange sued upon. *Bell vs. Hagerstown Bank,* 7 *Gill,* 223. *Brailsford vs. Williams,* 15 *Md. Rep.,* 159. 1 *Greenl'f on Ev.,* sec. 98.

2nd. The testimony of the witness, Frazier, set forth in the second exception was properly rejected for the reasons stated under the first point, and for the further reason that the witness testified as to a letter dated "Bainbridge," without producing the letter.

3rd. The evidence offered by the plaintiffs to lay a foundation for the introduction of proof, as to what Tonge testified at the former trial, having been ruled out by the Court below, there was clearly no error in refusing to permit proof to go to the jury, that "the record of the former appeal" in this case contained a full statement of Tonge's evidence given on the first trial. Besides, the Court had already, and as we contend, correctly decided that the evidence of Tonge was insufficient for the purpose for which it was offered.

4th. The letter offered in evidence under the circumstances stated in the 4th exception, was properly rejected. It was offered the day after the evidence in the case had been closed, and the counsel had been directed to prepare their prayers. No reason was assigned why the letter had not been procured and offered in evidence at the proper time. The admission of the letter could not be claimed as matter of right at that stage of the cause. It was a matter which appealed to the discretion of the Court below, and this Court will not interfere with its exercise of that discretion. Of course the letter was inadmissible, if the Court below was right in its decision, that Tonge's evidence was insufficient, &c.

5th. The first prayer of the appellants was properly rejected. The fact that the appellee, who was the drawer of the bill, resided in Charleston, while the acceptor resided in Baltimore, furnished no ground for an exception from the general rule, that every party to a bill, who, by the dishonor thereof becomes liable to an action, is entitled to notice of demand and non-payment. 1 *Parsons on Bills and Notes,* 499. And cases cited under 7th point.

6th. The protest offered in evidence by the appellants merely stated that notices of demand and non-payment were left by the notary at the place of business of the appellants, in Baltimore, and furnished no proof that a notice was sent to the appellee. The first prayer of the appellee was therefore properly granted.

7th. There was no proof in the cause of any notice to the appellee of demand and non-payment of the bill, or of any sufficient excuse for the want of such notice. The bill was protested in Baltimore, on the 25th July, 1854, a letter mailed on that day in Baltimore would have reached Charleston on the 27th; the appellee left Charleston, on a visit to Baltimore, on the 26th. No notice was mailed to him; none was left at his last or then place of business or residence in Charleston, and neither ignorance of such place of business or residence is shown, nor inability to learn it by diligent inquiry. Under these circumstances, notice should have been left at his last place of business or residence in Charleston, and the fact, that instead of a separate establishment of his own, he had his business desk in the counting-room of another person did not exempt the appellants from this obligation. Their theory, that upon the facts in the cause, the appellee was liable in this action, although no notice was given to him and no diligence used, or efforts made to put a notice in any channel by which it might reach him, cannot be maintained. If we are right in these views, the second, third and fourth prayers of the appellee were properly granted, and the second prayer of the appellant was properly rejected by the Court below. *Whiteford vs. Burckmeyer*, 1 *Gill*, 127. *Orear vs. McDonald*, 9 *Gill*, 354. *Nailor vs. Bowie*, 3 *Md. Rep.*, 251, 256.

8th. The testimony of Andrews and Butler was properly excluded by the Court below, because they were partners in the firm of Williams, Butler & Co., which had purchased the bill from the appellee, and had endorsed and transferred it to the appellants.

As endorsers, they were interested in enabling the appellants to recover in the cause, and did not stand indifferent between the parties. They had received notice and were

themselves liable on the bill, while, for want of notice to the appellee, they could not recover against him.   It was not, therefore, one of those cases in which their interest was balanced by a right to recover over against one party what they might be made to pay to the other; nor was it the case of a prior endorser, who, when called as a witness in an action against a subsequent endorser, is impartial and compe- tent, because he is alike liable to the plaintiff and the defen- dant.   It is admitted that the competency of an endorser to testify depends upon his interest, precisely as does the com- petency of any other witness.   And it is contended that here the witnesses were directly interested, because if the bill should be collected from the appellee, they would be relieved from an existing pecuniary liability, and the very object of their testimony was to enable the appellants to collect the money compulsorily from the appellee by the obtention of a judgment against him.   Besides, the bill had been transfer- red by Williams, Butler & Co., to the appellants, to be credi- ted in account current between them, and by enabling the appellant to recover from the appellee, the witnesses, An- drews and Butler, were in fact paying their own debt.   It is believed the cases in Maryland go only to the extent of holding that a prior party to a note is in general a compe- tent witness in a suit between subsequent parties.   *Talbot vs. Clarke,* 8 *Pick.* 51.   *Rice vs. Stearns,* 3 *Mass.* 225.— *Buskins vs. Wilson,* 6 *Cowen,* 471.   *Henick vs. Whitney,* 15 *John.* 240.   *Stenmetz vs. Curry,* 1 *Dallas,* 272.   *Barry vs. Crowley,* 4 *Gill,* 201.   *Ringgold vs. Tyson,* 3 *H. & J.,* 172.   *Bank of Columbia vs. Magruder,* 6 *H. & J.,* 178.

WEISEL, J., delivered the opinion of this Court:

This cause was before this Court on a former occasion, and, in the aspect in which it was then presented, it was decided that a notice from the acceptor to the drawer of the of the bill of its dishonor, was sufficient to bind the latter;

That the letter-press copy of the letter from the acceptor to to the drawer, conveying this intelligence, was admissible in evidence to prove such notice; but that the evidence, as then presented, was not sufficient to prove the mailing of the letter. *Brailsford vs. Williams & Son,* 15 *Md. Rep.,* 150.

The case was retried in the Superior Court of Baltimore city, on the *procedendo* from this Court, and the rulings on this trial form the subjects of the present appeal.

It is to be observed that the suit originated in an attachment upon warrant, which was levied upon a quantity of whiskey and corn of the defendant, appraised at $2,125.20. The defendant was returned "*non est*" to the writ of summons, but at the term, after the return, he appeared by attorney to the suit in which this writ was issued, and defended the action, the attachment itself still pending, and operating as a security for the amount of the judgment which may be recovered in the summons case. *Lambden vs. Bowie,* 2 *Md. Rep.,* 340. Both appeals have proceeded from the trials of the summons case.

The ground of action is a bill of exchange drawn by W. R. Brailsford, (the defendant below, and the appellee in this case,) of Charleston, S. C., on S. D. Tonge & Co., Baltimore, in favor of Williams, Butler & Co., dated at Charleston, June 22d, 1864, payable thirty days after date, for $1,800.92, which was accepted by S. D. Tonge & Co., and endorsed by the payees to the plaintiffs—the appellants. The bill was dishonored at maturity, and duly protested for non-payment.

In order to charge the defendant with notice of the non-payment by the acceptors of the bill, the plaintiffs offered certain testimony which was excluded by the Court. The first bill of exceptions is to this ruling. It appears that S. D. Tonge, of the firm of S. D. Tonge & Co., the acceptors, proved on the first trial, that on the day the bill matured he addressed a letter to the defendant, informing him that the

bill was not and would not be paid, and produced a letter-press copy of the letter, which was allowed to go in as evidence. The writer, Tonge, although returned summoned as a witness to the term at which the second trial took place, was not present to testify, and the effort of the plaintiffs was to introduce the evidence which Tonge gave on the former trial, together with the copy of the said letter, which proof was in the record of the first trial, and in the reported case. In order to lay a foundation for the admission of this secondary proof, the testimony of witnesses was offered to prove that Tonge formerly resided in Maryland, but for the last two years he had not resided in this State, but had removed to some other place, and could not be had as a witness upon this trial, and that his testimony could not otherwise have been procured. This was offered in connection with the proof of Talbot Wilson, the clerk of S. D. Tonge & Co., set out in the bill of exceptions, in relation to his agency in mailing the letters of Tonge, and which was intended to supply the deficiency of proof on the former trial. The testimony of the witnesses to prove the non-residence of Tonge was objected to on the ground that it was hearsay and matter of reputation, and that his non-residence could not be proved in this way. The Court below sustained the objection, and ruled out and rejected all the said testimony as inadmissible, being of opinion, that irrespective of any question as to the right to prove Tonge's residence by reputation and hearsay, if his evidence as given on the former trial were in, it would be insufficient in connection with the testimony of Talbot Wilson now given, to prove the mailing of the letter in question, as claimed by the plaintiffs.

We concur in the opinion of the Court below as to the insufficiency of Wilson's testimony to prove the mailing of the letter. He proved that he was the clerk of the acceptors from 1850 to 1855; that Tonge wrote the

business letters of the firm, and generally carried them to the post office himself; that when he did not do so, he placed them on a desk or table in his office and directed the witness to carry them to the post office; and that it was the practice of the witness to carry them to the post office, when they were thus placed on the desk or table, and he was directed by Tonge to mail them; and, being specially asked on cross-examination, whether he always put into the post office the letters he saw on the desk or table, whether Mr. Tonge told him to do it or not, he answered that he would not have put into the post office any letter he might have seen there, unless Mr. Tonge told him to do so; and that he had no recollection of putting into the post office the letter in question to Brailsford. This we regard as too uncertain and indefinite to authorise an inference or conclusion that the letter was in fact mailed by him, and is very different from the evidence adduced in the case of *Bell vs. The Hagerstown Bank*, 7 *Gill*, 216. In that case, it was shown that the letters written by the cashier were never taken by him to the post office, but were handed by him to the messenger, or left daily on his table for the messenger, whose regular and daily duty it was to take them to the post office and there deposit them, and that this was his—the messenger's—invariable and daily custom and practice, and that he had no recollection of ever having failed to perform this duty; the cashier having also proved that he had a distinct recollection of having received the notices in that case, and that he was very sure that on the day he received them, he sealed and directed them to the drawers and endorsers at their respective post offices. If, therefore, Tonge had been present, and had proved what he did on the former trial, the additional proof by Wilson was insufficient to establish the fact of the mailing of the letter, and complete the evidence of notice to the defendant.

The testimony offered by Mr. Frazier and Mr. Malcolm, the one to prove the non-residence of Tonge, and the other

what Tonge proved on the former occasion, and which is found in the second and third bills of exceptions, was also properly objected to, and excluded by the Court upon the same grounds as those given in the first bill of exceptions.

The fourth bill of exceptions was taken to the Court's refusal to allow a letter to be given in evidence, spoken of by Mr. Frazier in his examination the day before, and which was not produced, when the testimony on both sides was then closed, and to the future introduction of which the defendant's counsel objected. Under the rules of the Court, the cause was ready for the prayers of the parties on both sides, and the introduction of the testimony was in the discretion of the Court, and if introduced, related only to the non-residence of Tonge. It was, therefore, under the former rulings of no avail to the plaintiffs on the trial, and was properly rejected.

In the progress of the trial, the plaintiffs offered in evidence, to show a waiver of notice by the defendant, or an excuse for not giving it, the testimony of Augustus O. Andrews and Richard M. Butler, of South Carolina, taken under a commission issued by them, and in connection with other proof admitted in the cause. The introduction of the proof taken under the commission was objected to by the defendant's counsel when offered, but the Court allowed it to go in then, and be read subject to exceptions, to be afterwards discussed and decided. Its admissibility was considered in connection with the prayers that were offered, and the Court sustained the exceptions to the testimony of the two witnesses above named, and ruled it out of the cause. The Court also rejected the plaintiff's prayers and granted the defendant's. To all which rulings the fifth exception was taken.

The counsel for the appellants, in his argument on this appeal, and in his brief, did not insist upon the merits of the

prayers, but confined his views to an examination of the question of the competency of Andrews and Butler to testify for the plaintiffs below, and to the sufficiency of their proof to warrant the jury in finding either that the defendant had received due notice of the dishonor of the bill, or that he had waived his right to take advantage of the want of such notice.

The witnesses named, were both members of the firm of Williams, Butler & Co., the payees and indorsers of the draft or bill of exchange, both at the time of its making and maturity, and their co-partner, Williams, was also a member of the firm of John Williams & Son, the plaintiffs, being the indorsees and holders of the draft.

It was proved in the cause by the plaintiffs' answers to a bill of discovery filed by the defendant, that the draft was received by the plaintiffs from Williams, Butler & Co., and credited to them in account current between the firms, and that the amount had not been repaid to them, the plaintiffs; that at the time the draft was received by the plaintiffs, there were current open accounts between the firms, and upon a final settlement, Williams, Butler & Co. would have been debtors to the plaintiffs; that when the suit was instituted the draft was the property of the plaintiffs, John Williams & Son, and the accounts between the two firms was at that time closed, and the firm of Williams, Butler & Co. had before that time been dissolved, and there was no account then between them.

These witnesses were parties to the bill as indorsers, and they were offered to charge the defendant, the drawer, with notice of its dishonor by the acceptors, or its equivalent, and thus to enable the plaintiffs to recover a judgment against the drawer, whose effects were held, by virtue of the attachment, as security for the amount, as upon the recovery the plaintiffs could have moved for and obtained a judgment of condemnation in the attachment suit.

The objection to their competency is not because they are parties to the bill. That is no longer a question. Nor were they called to impeach its original validity, having given it currency by their indorsement, (about which the Courts have been much divided,) but to prove a matter affecting a recovery upon it, subsequent to their indorsement.

The only objection that can be urged to them as witnesses is on the score of interest. If they were directly or necessarily interested in the event of this suit, under the circumstances in which it was presented, and were called to support such interest, they were incompetent to testify, and their proof was correctly excluded, (the trial in this case having taken place before the passage of the Act of Assembly of 1864, ch. 109.) The *general* rule in favor of the competency of an indorsee of a bill as a witness against the acceptor or drawer, with the reasons for it, is given by Professor Green-leaf, (1 *Greenl'f Ev.*, sec. 400,) and with this accord all the authorities and text-writers. In every case where the party standing in this relation has been permitted to testify, his interest was equally balanced between the parties, or he was released by the party hindering him.

It becomes the Court, then, to inquire, whether in the attitude in which these parties were presented as witnesses, there were special facts which created an interest in their favor which would exclude them from testifying.

Such facts, we think, are disclosed by their own testimony. They received notice as endorsers of the dishonor of the bill which fixed their liability to the plaintiffs, whilst they failed to serve the defendant with the notice for him, either personally or at his place of residence or business, which relieved him from his liability to them. By enabling the plaintiffs to recover from the defendant, especially in an action which secured the payment of the judgment by means of the attachment they would effectually shield themselves from suit and liability to the plaintiffs. The holders would not be induced

Williams & Hoogewerf vs. Brailsford.

to resort to them, when, by a recovery against the defendant, they would have, as it were, the means of payment already in reserve. If they should abandon this advantage and institute suit against the indorsers, these in their turn would be hopeless of recovery from the drawer by reason of their failure to give him the necessary notice. They did not, therefore, occupy an indifferent position between the parties, as endorsers ordinarily would where both they and the drawer had regularly received notice, and if compelled to pay the holder they could successfully resort to the drawer for reimbursement.

We, therefore, are of opinion that the testimony of these witnesses was properly excluded by the Court, and that the defendant's prayers were properly granted.

The plaintiff's prayers were obviously incorrect, the first in assuming that in order to charge the defendant, the jury should find that he was a citizen of the State of Maryland at the time of the maturity of the bill, and had a place of business or residence in it at said time; and the second, in dispensing with notice to him, although he had lived in Charleston, but had left it for Baltimore on a visit before notice could have reached him in the regular course of the mail, and that he had no regular place of business in Charleston, and left no person there to attend to his business in his absence. They were properly rejected.

Concurring with the Court below on all its rulings, we affirm the judgment.

*Judgment affirmed.*

(Decided June 22d, 1866.)