WILLIAM G. WETHERALL and ROBERT MICKLE, Executors of EDWARD GRIFFITH, *vs.* HENRY S. GARRETT and JOHN W. GARRETT, Surviving Partners of ROBERT GARRETT.

*How notice of Demand and Non-Payment may be proved—Evidence proper to go to the Jury.*

The holder of a promissory note, in a suit against the endorser, may prove notice of demand upon, and of non-payment by the maker of said note, either by the notary, or by the notarial certificate, or by the acts and declarations of the endorser, or when necessary, he may invoke the aid of all combined.

Where there is evidence derived from a legal source, and tending to prove the issue, it should be submitted to the jury.

APPEAL from the Circuit Court for Cecil County.

The appellees, together with Robert Garrett, since deceased, instituted, against Edward Griffith, since deceased, in the Circuit Court for Harford county, in the year 1854, five separate actions, which were subsequently removed to the Circuit Court for Cecil county, and there, by an agreement of counsel, consolidated and tried as one. The causes of action were eight promissory notes, for $1,200 each, drawn by J. Higinbotham, to the order of the defendant, Griffith, by whom they were endorsed to the plaintiffs. Each of these notes, at maturity, was protested for non-payment, and notice of protest was, in each case, sent to the endorser. Each notarial certificate contained the words "And on the same day I addressed written notice to the endorser of said promissory note, *informing him that it had not been paid,* and that he would be held responsible for the payment thereof;" but did not state, that the notice informed the endorser that "*payment had been demanded and refused.*" At the trial, the plaintiffs, in order to show that the notices given by the notary were, in fact, in due form, offered in

evidence a transcript of the record of the proceedings in the case of Spalding & Brandt against the said Edward Griffith, in which the testimony of Joseph B. Williams — the same notary who made protest of the notes now sued on — was taken under a commission. But this record was ruled inadmissible by the Court, and the propriety of this ruling was not discussed in this Court, as the two bills of exceptions taken by the plaintiffs were not appealed on. The plaintiffs also proved, that they had served a notice on defendant's counsel, requiring defendant to produce the several notices, which the notary stated, in his notarial certificates, he had sent to the defendant; and, also, proved the death of the notary. To supply the defect in the notarial certificates, the two following letters were offered in evidence by the plaintiffs, from which the jury might *infer notice* to the defendant of a demand on the maker of said notes, and his refusal to pay the same:

"HARFORD, March 29, 1852.
"Messrs. ROBERT GARRETT & SONS, Baltimore:

"*Gents:* Your letter of the 26th inst., has been received; *John Higinbotham obtained all those endorsements from me through fraud;* the evidence of which I have placed in the hands of Otho Scott, Esq., and by his advice *I shall resist the payment of the papers.* All you gentleman who shaved that paper, enabled John Higinbotham to perpetrate that fraud; otherwise he could not have done it.

"Very respectfully, your obed't serv't,

"EDWARD GRIFFITH."

"HARFORD, July 6th, 1854.

"*Gents:* I received your letter of yesterday's date to-day; I have not changed my mind since I had the interview with you at Barnum's Hotel last winter. I then stated that when Otho Scott, Esq., discovered the fraud that had been practised on me, he advised me to have nothing to do with the

matter, but to put the whole business in his hands, and I have done so. I shall transmit to him you'r letter. In a letter I received from Mr. Scott, dated Baltimore, June 8th, he says: 'I saw Messrs. Garrett last night, by appointment, but could make no terms with them. I was anxious to settle their case, as litigation annoys you and would have agreed to better terms than I would give if it was my own case.' You appear to be wrongly informed when you say John Higinbotham made an assignment to me; I had but one brief interview with him; when I discovered the fraud, I declined to have anything to do with him, and turned him over to Mr. Scott; I am told he assigned the odds and ends of his grocery store to Mr. Wm. G. Wetherall, in trust for those persons he defrauded, and then collected what he could of the debts, without giving any account to Mr. Wetherall; you are welcome to the whole list, as far as I am concerned; your conjecture that the suit will last longer than some of us, will very likely turn out true; I do not expect to last it out.

"Very respectfully,

"EDWARD GRIFFITH.

"Messrs. ROBERT GARRETT & SONS, Baltimore."

The plaintiffs further proved, that Higinbotham, the maker of the notes, stopped payment on the 17th of July, 1851, that on the 23d of the same month, at the request of William G. Wetherall, (the defendant's brother-in-law,) he went to Barnum's, and there met the defendant and his counsel, Mr. Otho Scott; that Mr. Scott drew up in the defendant's room, at the hotel, an assignment from Higinbotham to Wetherall, which embraced all his property that he considered to be of any value; that the assignment was attested by Mr. Scott, and it was there delivered, the defendant being present and expressing no dissent to it. The assignment was made after the maturity of the first note, and before the maturity of the other notes sued on. Henry S. Garrett, one of the plaintiffs, testified that he had had several conferences in reference to

the payment of the notes with Griffith and his counsel, Mr. Scott, and that neither of them, on those occasions, raised any objection to the liability of the former, or to the want of notice of protest.

The plaintiffs offered four prayers, the second and fourth of which were rejected, and are therefore omitted. The first and third are as follow:

First. If the jury shall believe from the evidence that John Higinbotham made and the defendant endorsed the several promissory notes offered in proof by the plaintiffs; and that when and as the said notes respectively fell due, they were respectively and duly presented by a notary public for payment, and were respectively dishonored; and that at the time of the maturity of each and all of said notes, the defendant's post office was Perrymansville, in Harford county; and that notices in due form of such presentment and dishonor of each of the said notes were mailed on the respective days of the maturity thereof by the said notary, addressed to the defendant at Perrymansville; that is to say, notices stating respectively the demand of payment of each of said notes on the day of its maturity and the non-payment thereof; then that the plaintiffs are entitled to recover the amount of said notes, with interest on each, from the day of its maturity; provided the jury are satisfied from the evidence, that on the days when said notes respectively fell due, the same belonged to Robert Garrett, Henry S. Garrett and John W. Garrett, as partners in business, under the firm of Robert Garrett & Sons, and continued to belong to them up to the day of the death of the said Robert Garrett, and since his death, have continued to be the property of the said Henry S. Garrett and John W. Garrett, as survivors of the said Robert. And that the jury, in finding notices as above mentioned are not restricted to the notarial certificates, or to direct evidence thereof, but may infer the same from the letters of the defendant to the plaintiffs, offered in evidence, and dated March 29th, 1852, and 6th July, 1854, (if from the evidence they shall find said let-

ters to have been written by him,) and the defendant's failure to assign the want of sufficient notice as a ground for not paying the notes offered in evidence, unless they shall find such inference rebutted by other evidence in the cause.

Third. That if the jury shall believe from the evidence that John Higinbotham made, and the defendant endorsed, the several promissory notes offered in proof by the plaintiffs, and falling due after the 22d July, 1851; and that said Higinbotham, on the 23d of July, 1851, made the assignment which has been offered in evidence by the plaintiffs, and that said assignment was made in the presence and at the instance of the defendant, or at the instance of the defendant's counsel, with the knowledge of the defendant, and that the said assignment conveyed all the property at that time owned by said Higinbotham; then that the plaintiffs are entitled to recover the amount of said notes, with interest on each from the day of its maturity, whether notice of the dishonor of said notes was or was not duly given by the holders thereof to the said defendant; provided, the jury shall find that when, and as the said notes respectively fell due, they were respectively and duly presented for payment; and provided, also, the jury are satisfied that on the days when the said notes respectively fell due, the same belonged to Robert Garrett, Henry S. Garrett and John W. Garrett, as partners in business, under the firm of Robert Garrett & Sons, and continued to belong to them up to the day of the death of said Robert Garrett, and since his death, have continued to be the property of said Henry S. Garrett and John W. Garrett, as survivors of the said Robert.

The defendant asked the Court to instruct the jury as follows:

1st. That the plaintiffs are not entitled to recover in this action, unless there was demand of payment of the maker of said notes, and notice thereof to the defendant, the endorser, or a waiver of said notice.

2d. That the protests offered in evidence by the plaintiffs are not sufficient evidence of the notice to defendant, and that

payment of the several notes offered in evidence by them was duly demanded of the maker and refused, so as to make the defendant liable as endorser of said notes.

3d. That there is no sufficient evidence in the cause to prove any other notice than that annexed to the notarial certificates offered in the cause.

4th. That the paper offered in evidence by the plaintiffs, purporting to be an assignment from John Higinbotham to William G. Wetherall, is not, of itself, sufficient proof of a waiver by defendant of notice that payment of the notes offered in evidence by plaintiffs, was duly demanded of the maker and refused, so as to make the defendant liable as endorser of said notes.

5th. That there is no sufficient evidence in this cause to prove such waiver of notice.

The Court granted the first and third prayers of the plaintiffs, as also the first, second and fourth prayers of the defendant, and refused the others. To the refusal of the Court to grant the defendant's third and fifth prayers and to the granting of the plaintiffs' first and third, the defendant excepted. The jury rendered their verdict for the full amount of all the notes sued on, with interest, and judgment was entered for the amount. The defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, MILLER, GRASON, ALVEY and ROBINSON, J.

*Thomas F. Bowie, Henry W. Archer* and *William Schley,* for the appellants:

The defendant's third prayer ought to have been granted. There was no sufficient legal evidence in the cause, from which the jury could find that any notice was given to defendant, other than the notice shewn by the notarial certificate; much less, that such notice was given, as was necessary to fix the liability of the defendant, as endorser.

Notice to the defendant's counsel to produce the notices of protest, (which are said, in the notarial certificate, to have been sent to the defendant, by the notary,) merely entitled the plaintiff to give secondary evidence of the contents of such notices. Defendant was not bound to furnish evidence to the plaintiffs; and even if it can be assumed, that it was in the defendant's power to have produced such notices, the omission to produce affords no ground for any inference, respecting the contents of the papers called for. *Law vs. Wells, Peake's N. P. Cases,* 93; *Cooper vs. Gibbons,* 3 *Camp,* 363; *Lawson vs. Sherwood,* 1 *Starkie,* 315, (2 *E. C. L. R.* 405;) *Morrison vs. Welty,* 18 *Md. Rep.,* 169.

The liability of the defendant, as endorser, being contingent on due demand and non-payment, and on notice of such demand and non-payment, the *onus* was clearly on the plaintiffs to establish these facts. As part of their evidence, the plaintiffs introduced the notarial certificate, and there is no pretence of any other evidence of the *tenor* of the notices, sent to the defendant by the notary. Now, this notarial certificate was legal and admissible evidence, independently of the Act of 1837, ch. 253, as the notary was dead. *Whittington vs. The Farmers' Bank, &c.,* 5 *H. & J.,* 489, and 6 *H. & J.,* 548. The Act of 1837 is embodied in the Code of Public General Laws, Art. 14, sec. 7, and is precise and definite: " When such protest shall state that notice of such non-payment, &c., has been sent, &c., *and the manner of such notice,* such protest shall be *prima facie* evidence, that *such* notice has been sent or delivered, *in the manner therein stated.*" The notarial certificate, therefore, shews, that *such* a notice, as *therein stated* was sent. It is *prima facie* evidence that no other notice was sent.

It is conceded, that evidence of notice to an endorser may be given, in addition to that contained in the protest, if such evidence be not *inconsistent with* or *contradictory of* the protest. *Sasscer vs. The Farmers' Bank,* 4 *Md. Rep.,* 409; *Graham vs. Sangston,* 1 *Md. Rep.,* 59, and *Hunter vs. Van Bomhorst*

& Co., 1 *Md. Rep.*, 504. If there had been evidence in the cause, from which the inference could be legitimately drawn, that a different notice, from that proved by the notarial certificate, had been sent to the defendant, then there would be *some* evidence to go to the jury, and the defendant's third prayer would have been properly rejected. But the *only* evidence as to the notice sent, being the notarial certificate, the sufficiency in law of such notice was determinable by the Court. *Ricketts & Whittington vs. Pendleton,* 14 *Md. Rep.*, 330. The only proof as to the contents and tenor of the notice being the notarial certificate, there could be no inference in law, or in fact, inconsistent therewith. *Farmers and Mechanics' Bank, &c. vs. Allen,* 18 *Md. Rep.*, 478; 1 *Parsons on Notes and Bills,* 619.

The letters of the defendant offered in evidence as letters, "from which the jury might infer notice to the defendant of a demand on the maker of said notes, and his refusal to pay the same," could hardly have been offered, as furnishing, *per se, any* evidence in relation to notices. It was for the Court, and not the jury, to construe those letters. *Farmers' Bank of Maryland vs. Duvall,* 7 *Gill & Johns.*, 95. It is likely that the letters were relied on, not because of their *contents,* but as affording a ground of inference, that due and formal notice was given, because of the *omission* of the defendant to base, in said letters, his refusal to pay, on the ground that he had not received due notice of demand and non-payment. The situation of the plaintiffs was, in no manner, changed by the omission of defendant to state, as the ground of his objection to pay, or as one of his objections, that proper notice had not been sent. He did state however, emphatically, that he meant to resist payment of the *papers.*

The proposed *compromise* of the plaintiffs' demands, afford no evidence that due notice had been given to the defendant.

The offer was to pay a proportion of the plaintiffs' claim, seventy-five per cent. This offer was not accepted; and is no admission of the defendant's liability. The old notion, that

an offer, by way of compromise, must be made, with a reservation that it is without prejudice, to exclude it from being evidence, is not adopted in Maryland. *Reynolds, &c. vs. Manning, Stimpson & Co.*, 15 *Md. Rep.*, 526.

Many persuasive considerations may induce a man to offer a compromise, where he has a good defense. Instances are not unfrequent, where a party, whose name has been *forged*, has paid large sums, by way of compromise of the claim, rather than compromise the honor or safety of the guilty party; and if his offer have been refused, he is not estopped from relying on the defense of forgery. Where a party has paid *some* notes, on which his name appeared as endorser, (having been forged by the maker,) he may nevertheless defend himself against other notes, forged by the same party. *Walters & Co. vs. Monroe*, 17 *Md. Rep.*, 150.

The plaintiffs' first prayer ought not to have been granted.

The *factum probandum* is, that notices *in due form* were sent to the endorser. The direct proof of the *form* of notice in each case, was the notarial certificate; and the Court had said, in granting the defendant's second prayer, that such certificate was *not* sufficient evidence of due notice. The object of the plaintiff was not to establish that *notice* had been given; but *due* notice, other than what was shewn by the notarial certificate. Hence the object of the prayer was to get an instruction that would justify the jury in drawing an inference from other evidence, pointed out and specified in the prayer. That other evidence consisted of the two letters of defendant, and of the defendant's failure to assign the want of *sufficient* notice, as the ground of his refusal to pay. Now the letters do not, nor does either contain one word from which such inference could be drawn; and it was the duty of the Judge so to have told the jury. It could only be from wild speculation that such an inference could be drawn. *Farmers' Bank of Maryland vs. Duvall*, 7 *Gill & Johns.*, 95. Nor can it rationally be inferred from

Wetherall and Mickle, Ex'rs, *vs.* Garrett.

the failure of defendant to assign the want of *sufficient* notice, as a reason for his refusal to pay, that a *sufficient* notice had been sent. It is mere speculation; for even if he received such defective notice as the notary says he sent to him, he may not have known, being a layman, that it was defective and insufficient.

But the prayer is vicious in another material respect. It is calculated to mislead the jury, by its concluding words, "*unless* they shall find such inference *rebutted* by other evidence in the cause." The jury might well suppose, that the instruction intended to convey the notion, that *in the absence of rebutting evidence*, they ought to draw such inference. The instruction, whatever it might have been, should have put the case to the jury *on the whole evidence*. The burden was on the plaintiffs to shew *due notice;* it ought not to have been shifted upon the defendant, so as to require him to show that the notice was not sufficient.

*Daniel M. Thomas* and *S. Teackle Wallis,* for the appellees:

The only point, which it is material to consider in this case, is whether the question of notice was properly left to the jury upon the evidence contained in the plaintiffs' first prayer. If this be determined in the affirmative, it follows that the defendant's third prayer was properly rejected. The only assailable portion of this prayer is that which states that the jury, in finding notices to the endorser, are not restricted to the notarial certificates, or to direct evidence thereof, but may infer the same from the defendant's letters of the 29th of March, 1852, and 6th of July, 1854, and the defendant's failure to assign the want of sufficient notice as a ground for not paying the notes offered in evidence. The principle that the jury are not restricted to the notarial certificates, has been settled in this State by the cases of *Sasscer vs. The Farmers' Bank,* 4 *Md. Rep.,* 419; *Long & Byrn vs. Crawford,* 18 *Md. Rep.,* 220; *Farmers & Mechanics' Bank, &c. vs. Allen,* 18 *Md. Rep.,* 475; *Nailor vs. Bowie,* 3 *Md. Rep.,* 258; 1 *Par-*

*sons on Notes and Bills*, 612, 616 ; *Higgins vs. Morrison*, 4 *Dana.*, 100.

The prayer, therefore, is unobjectionable, provided the evidence from which the jury were permitted to *infer* that due notice was given, was sufficient to warrant such inference. The evidence abundantly shows that the defendant had no intention of paying these notes, in whole or in part, if he could avoid it; and he appears to have placed the whole matter from the first in the hands of his counsel, Mr. Otho Scott, than whom no one was more likely to have detected a defect in the notices, if it existed. And no one would know better than Mr. Scott, that a defect in the notices would be an absolute discharge of the endorser's liability, and it is not to be supposed that he would have concealed such a complete defence from his client. And yet we see from the testimony of Mr. Henry S. Garrett, and the defendant's letter of the 6th of July, 1854, above referred to, that both the defendant and Mr. Scott, after the dishonor of the notes, had frequent conferences with the plaintiffs, with a view to effecting an adjustment, in which offers of compromise were made and commented on, but in none of which was any allusion made to any defect in the protests. It is difficult to read this evidence and reconcile it with the fact, that all the time both Mr. Scott and Mr. Griffith were aware of a defect in the notices, which constituted a complete bar to any action on the notes; and it is equally difficult to suppose that the defect could have existed without their being aware of it.

But a still more pregnant circumstance from which the jury were permitted to infer that due notices were given, is to be found in the two letters before referred to, written to the plaintiffs by the defendant, in which he rests his defence to the notes upon an entirely different ground, namely, that John Higinbotham had obtained his endorsements *through fraud*. His failure to mention, in the same connection, his other and better defence, if it existed, is a strong ground for

the presumption, that the notices were not, at that time, charged to be defective, simply because, in point of fact, they were not defective. It is not claimed that this was conclusive evidence, but that it was evidence sufficient to go to the jury, particularly in connection with the above mentioned circumstance of a failure to allege any defect in the notices in the conferences of the defendant and his counsel with the plaintiffs. *Hunter vs. Van Bomhorst & Co.,* 1 *Md. Rep.* 517.

That the conduct of the endorser, after dishonor, furnishes a ground for the inference of due notice having been given, has been held in the case of *Long & Byrn vs. Crawford,* 18 *Md. Rep.,* 220, where the inference was permitted to be drawn from an offer to pay, after suit brought. But the point has still more directly been decided in the case of *Wilkins vs. Jadis,* 1 *Moody & Rob.,* 41, in which a verdict against the drawer of a bill was sustained, where the only evidence of notice was that the defendant, two days after maturity, sent a person to the plaintiff to say *that he had been defrauded of the bill,* and should defend any action upon it.

In the case of *Campbell vs. Webster,* 52 *E. C. L. R.,* 256, 263, TINDALL, C. J., says: "If, instead of mentioning that which would have been a good answer, he (the endorser) sets up something foreign, that is an admission, according to all the cases, that the good ground of defence does not exist." See also *Byles on Bill,* 238; *Booth vs. Jacobs,* 28 *E. C. L. R.,* 401; *Curlewis vs. Corfield,* 41 *E. C. L. R.,* 791; *Horford vs. Wilson,* 1 *Taunt.,* 13, 14; *Spring Garden Mutual Ins. Co. vs. Evans, use of Riley,* 9 *Md. Rep.,* 19; *Union Bank of Georgetown vs. Magruder,* 7 *Peters,* 289; *Robbins, et al. vs. Pinckard, et al.,* 5 *Smedes & Marshall,* 72.

It is difficult to conceive how the present case can be distinguished, to the appellees' disadvantage, from that of *Wilkins vs. Jadis,* and it is submitted that that case is not only supported by precedent, as shown by the other cases above cited, but also by sound reason. Nor can the application of

this principle be considered a too strict and technical applica-
tion of a rule of law against the defendant.   On the contrary,
if a too strict ruling of the Court upon technical grounds can
be considered as applied at all in this case, it was so done as
against the plaintiffs.   For the Court below, at the instance
of the defendant, and on purely technical grounds, excluded
the sworn testimony of the notary himself, now deceased,
taken in another case against the same defendant, by which
testimony it appeared that the blank notices used by him at
the time of the protests in this case, were in point of fact in
due form.

Nor can the defendant allege that he was prejudiced by the
ruling in this case, because if the notices really were defective
in form, he had it in his power to show it, either by pro-
ducing the notices themselves; or, if they were lost, by put-
ting himself upon the stand as a witness, and proving the fact
by his own testimony.

Finally, it is submitted, with great confidence, that the fact
of notice was submitted to the appropriate tribunal for deter-
mining questions of fact—a jury of twelve impartial men;
and as they, after careful consideration, declared by their
verdict that they found the evidence of notice sufficient, this
Court will not, under all the circumstances of the case, with-
out very strong considerations, which do not exist, disturb
that verdict.

[The argument on the question of waiver has been omitted, inasmuch
as a decision thereon was deemed unnecessary by the Court.     Reporter.]

ROBINSON, J., delivered the opinion of this Court.

That the holder may prove demand and notice, by pre-
sumptive evidence, we consider well settled by a long and
unbroken series of English decisions, and fully sustained by
the best considered of American cases.   To require direct
proof in every cause, would be to apply a harsh and rigorous
rule, in regard to commercial paper, unknown in the proof

of other contracts, and subversive of the plainest principles of justice. Whilst notice of demand and non-payment, is necessary to fix the liability of the endorser, the proof of that notice, must be governed by the same rules of law, which obtain in the trial of all other causes. The holder may prove it by the notary, or by the notarial certificate, or by the acts and declarations of the endorser, or, if necessary, he may invoke the aid of all combined. In this case, the notary was dead, the notarial certificate defective, the notices mailed to the defendant not produced, although notice to bring them into Court was duly served. The plaintiffs were obliged, *ex rei natura*, to rely upon other evidence to prove due notice of the dishonor of the notes, or they must fail in their action. In such a case, it was eminently proper to instruct the jury, that in finding notice of demand and non-payment, they were not confined to the notarial certificate, or to direct evidence thereof. The letters of the 29th of March, 1852, and July 6th, 1854, written after the maturity of the notes, in which, the defendant voluntarily declared his defence to be fraud, and not want of notice;—his conferences with the plaintiffs in reference to the payment of the notes;—his complaint that it was a heavy claim to pay, and that he wanted an abatement;—his promise to send his counsel, Mr. Scott, to arrange the matter;—the interviews with Mr. Scott, and offer by him to pay seventy-five per cent. of the claim;—the examination of the notes with the notarial certificates annexed by the defendant, and not one word of complaint about want of notice, nor one word in denial of his liability at that time, or in any of his interviews with the witness Garrett, who was demanding payment, were facts to go to the jury, which, if believed, authorized them to find due notice of the dishonor of the notes. We do not say that the evidence was conclusive, but that it was *legally* sufficient, to be submitted to the finding of the jury. Nor is it an answer, to say that the defendant was a "*layman*," and might not have known that the protests were insufficient. The record shews, that

from the time he discovered his misplaced confidence in Higinbotham, even before the maturity of the notes, he sought the advice of eminent counsel. If the protests were defective, no one knew it better than Mr. Otho Scott, his legal adviser, and no one would have been more ready, to have exhibited them in Court, as a complete answer to the plaintiffs' demand. We discover no error in refusing the defendant's third prayer. It required the Court to say there "was no sufficient evidence in the cause to prove any other notice, than that annexed to the notarial certificate." In *Davis vs. Barney*, 2 *G. & J.*, 403, it was decided that if there were any legal evidence tending to prove the issue, the effect of that evidence was for the jury, also in *Richardson vs. Milburn*, 17 *Md. Rep.*, 68, it was held "that although the testimony of itself may have been weak and inconclusive, yet if derived from a legal source, and pertinent to the issue, the jury was the proper tribunal to pass upon it." In this cause, there was evidence independent of the notarial certificate, derived from a legal source, and tending to prove the issue. The defendant's prayer called upon the Court to exclude this evidence from the jury, and to have granted it, would have been a manifest error. The question of *waiver*, involved in the plaintiffs' third, and the defendant's fifth prayer, we deem it unnecessary to decide, because the verdict was obviously founded upon the first prayer, which asserted the plaintiffs' right to recover their whole demand, on the eight promissory notes of twelve hundred dollars each, with interest. In that prayer they claimed that the evidence was sufficient to fix the liability of the endorser for the whole amount. Should however the jury not find the evidence sufficient to prove due notice of the dishonor of the notes, the plaintiffs in their third prayer maintained, that the transfer by Higinbotham to the defendant, dispensed with the necessity of proving notice, as to the seven notes which became due, after the said transfer of the maker's property. In this prayer the plaintiffs only claimed a verdict for the amount due on the seven notes with

interest. The verdict, however, was for the whole amount due on the eight promissory notes, with interest on the same, and must have been rendered in accordance with the plaintiffs' first prayer.

Concurring with the rulings of the Court, we affirm the judgment.

*Judgment affirmed.*