THE HOWARD BANK OF BALTIMORE *vs.* JOHN CARSON
and ORVILLE HORWITZ, Assignees, and others.

*Promissory note—Notice to an Endorser— What will discharge
an Endorser—Notarial certificate of Protest, prima facie
evidence only.*

The appellant was the holder of several promissory notes, all, except
one, drawn by J. F. P., Jr., and all endorsed by J. F. P. On 3rd
April, 1867, after the making of the notes but before any of them
had fallen due, P. & Co., a firm consisting of J. F. P. and J. F. P.,
Jr., failed, and made an assignment to the appellee Horwitz, of their
partnership and individual property, in trust for the benefit of
their creditors. The trustee the same day took possession of their
place of business, and afterwards it was occupied by other parties.
The appellant handed the notes to notaries to take the proper steps
to demand payment and give due notice of their dishonor. The
demands of payment were made at the office that had been the
place of business of P. & Co., and the notices to the endorser of
non-payment, were left there. There was no effort to present the
notes to the maker personally, or to give other notice to the
endorser of their non-payment; although it appears, they might
have been found. HELD:

That the condition upon which the endorser was responsible had not
been complied with, and he was not bound by his contract to pay
the notes.

The engagement of the endorser of a promissory note is conditional,
and any neglect or *laches*, on the part of the holder of the note, in
not making due presentment thereof, or not giving due notice of its
non-payment by the drawer, will discharge the endorser.

The notarial certificate of protest furnishes only *prima facie* evidence
of the facts therein stated.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from an order of the Circuit
Court (GILMOR, J.,) overruling exceptions on the part of

Howard Bank of Baltimore *vs.* Carson and Horwitz, Assignees, *et al.*

the Howard Bank to the auditor's account, (which, under the Court's ruling, had rejected a part of the claim of said bank,) and ratifying the same. The facts of the case sufficiently appear in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, GRASON, MILLER and ALVEY, J.

*Henry Stockbridge,* for the appellant.

The appellees have offered evidence tending to establish a fact, for the purpose of impeaching the verity of the protest, as to the notice of the dishonor of the notes given to the endorser. The certificate of the protest of all the notes, which matured after the failure of the firm of "Purvis & Co.," is that notice was given to the endorser at "his place of business."

This certificate of the notary proved the fact unless overcome by proof given by the appellees. *Tate vs. Sullivan,* 30 *Md.,* 464; *Barry et al. vs. Crowley,* 4 *Gill,* 194; *Peoples' Bank vs. Brooke,* 31 *Md.,* 7; *Art.* 67, *sec.* 4, *Code Pub. Gen. Laws.*

To overcome this *prima facie* proof, the appellees have brought forward several witnesses, who have sworn with great unanimity that *they do not know* of the endorser's having had any place of business, or having been engaged in business, after the failure of his firm on the 3rd of April, 1867.

But these very witnesses of the appellees prove, that after the failure of "Purvis & Co." the place of business of that firm was occupied by their former clerks, then employed by Mr. Horwitz, for "ten days, counting from the day after the failure." That during that time James F. Purvis was in there frequently from time to time, and would have received any letter or notice that was left there for him.

Howard Bank of Baltimore *vs.* Carson and Horwitz, Assignees, *et al.*

It was during this interval, on the 9th of April, 1867, that the note dated 6th December, 1866, for $1500, matured and was protested.

The appellant submits, that the proof satisfactorily establishes the fact of sufficient notice given to the endorser of the dishonor of that note, to satisfy all technical demands.

Ten days is the shortest time named by any witness, as that for which the old premises of Purvis & Co. were occupied by the old clerks of the house, in closing up its business, and during which this endorser, James F. Purvis, was habitually there. That time, added to the 3rd of April, brings it to the 13th, and that is the very day on which Samuel J. Buckman bought the unexpired lease, and from which he had the possession of the place. From the time that he bought until February, 1868, James F. Purvis had a place of business in precisely the same spot where he had had one for years before. During that time all the other notes constituting this claim matured, and were protested, and, as the notary certifies, notice· was given to the endorser "*at his place of business.*"

The notice so given was all that the strictest construction of the technical rule requires.

But even if the endorser had not received formal notice of the protest, he had actual knowledge of all the facts, and knew the fact of the dishonor of the notes, just as well without protest as with a hundred. The maker of the notes was his son and his partner, and the place of business of both was one and the same. The same spot was the place for demand upon the maker (if any demand was necessary) and for notice to the endorser.

*Arthur W. Machen* and *Orville Horwitz* for the appellees.

In considering the questions of presentment and notice of dishonor, and the evidence particularly bearing upon them, it will be most convenient to take the notes separately.

As to the Sinclair and Purvis note, this was given in renewal of a previous one of that firm, which had consisted of Robert H. Sinclair and James F. Purvis, Jr., but had been dissolved in December, 1866, after an existence of about ten years. The note was written and signed by Sinclair, who used the firm's name in liquidation. This note matured June 24th, 1867. At this time James F. Purvis, Jr. was in Harrisburg, but Sinclair resided in Baltimore, and carried on business there, at No. 5 N. Charles street, where, or at the residence of Mr. Sinclair, it should have been presented for payment. But the only demand of payment was made at the old banking house of Purvis & Co., 192 W. Baltimore street, at which place the firm of Sinclair & Purvis never had conducted any business, and Purvis, Jr. himself had long left the said banking house for Pennsylvania. It is clear, therefore, on this ground, apart from all other questions, that there was *no proper presentment for payment* to bind an endorser. *Granite Bank vs. Ayres,* 16 *Pick.,* 392 *; Arnold vs. Dresser,* 8 *Allen,* 435 *; Ricketts vs. Pendleton,* 14 *Md.,* 330.

The next note is that of James F. Purvis, Jr., dated 6th December, 1866, discounted for the use of James F. Purvis, Jr., and in renewal of a line of previous notes. This note matured the 9th day of April, 1867. At this time the maker had no place of business, nor is there any pretence that he had any. The banking house had failed, and the assignment had been made, and James F. Purvis, Jr. was carrying on no business whatever. He still had a residence in Baltimore, as he did not break up housekeeping until the 16th of April, and the demand of payment should undoubtedly have been made at his place of residence; but the only presentment relied on was made at the former banking house of Purvis & Co., then in the possession of the *trustee,* where James F. Purvis, Jr. was not, and had no occasion to be.

And No. 192 W. Baltimore street was not, at that time, the proper place at which to leave the notice of dishonor,

not being James F. Purvis' *place of business*, after the assignment, and during the occupation of O. Horwitz. The case of the bank upon this point is not assisted by the testimony of Mr. Rich, as to his having seen the elder Purvis in occupation of a desk in the back office, which evidently relates to a subsequent point of time—after Buckman and Rutter, to whom the trustee assigned the lease of the building, entered into possession, which was not until the 13th of May. At the time in question, 9th April, Mr. Purvis, senior, having no place of business any notice of dishonor for him, should have been sent to his residence in Caroline street.

There was no sufficient notice of dishonor of the other note of $1500, dated 12th March, 1867, and payable the 15th of July, 1867.

The notary's certificate states, that he presented it for payment at the place of business of the maker, but *found it closed*, and no one to make answer, and that notice was left for the maker and endorser at their place of business the same day.

Mr. Sangston's testimony discloses, that he did not himself either make presentment or send notice of dishonor to the endorser. The course pursued was this: at or after three o'clock he delivered to a young man, whom he had employed as clerk, the notes he had received for presentment, the clerk took them around to the various places supposed to be the places of business of the makers, and there, upon failing to receive satisfactory responses to the demand, himself made and left the notices of dishonor, reporting afterwards what he had done, to his employer, who then made out and signed the protests.

This was not the course authorized by law. Even conceding that the notary may delegate to a subordinate the duty of presenting the paper—although the person entrusted with it was the notary, who alone strictly would seem to be authorized to demand and receive payment,

and conceding that the notary, when the note has been duly presented and dishonored, may employ a messenger to convey the notice of dishonor to the endorser, we insist that it is requisite, that the *making* and *sending* of the notice shall be the act of the *notary*. According to the practice pursued here, every essential act was left to the clerk; the notary, the only party entrusted, and the holder of the note for the important purposes of collection, or failing to collect, of performing those acts which. the law makes necessary in order to charge the endorser, doing nothing whatever—neither exercising any judgment nor perform- ing any act. Under such circumstances, the certificate of protest, intended by the statute to be *prima facie* evidence of the acts of the notary, instead of stating matters within his knowledge, states nothing but his understanding of the oral reports of his clerk—facts as to which the notary, if sworn, would not be competent to testify, as being but hearsay. *Onondaga Bank vs. Bates,* 3 *Hill,* 53; *Comm. Bank vs. Barkesdale,* 36 *Missouri,* 563; Buller, J., *Leftley vs. Mills,* 4 *T. R.,* 175; *People's Bank vs. Brooke,* 31 *Md.,* 7, 10.

In *Munroe vs. Woodruff,* 17 *Md.,* 159, the notices of protest, though mailed by the clerk, were *signed* by his employer, the notary. The clerk also was himself a notary.

As to this note of 12th March, 1867, it further appears from the evidence, that the notices of presentment and dishonor, simultaneously given by the clerk, were left after business hours at 192 W. Baltimore street, which, at the time of its maturity, was occupied by the banking firm of Buckman & Rutter; and the clerk found the building closed. The rule is well settled, that while demand or service may be adequately made at the *resi- dence* of the party at any reasonable hour in the evening; it must, if the place of business be the place chosen, be made during the usual hours of business, and if at a

banker's, within banking hours. *Byles on Bills*, 211, *marg.* ; *Chitty on Bills*, 485, *marg.*

Again, Buckman & Rutter's was not, according to the weight of evidence, James F. Purvis' place of business in July, 1867.

As to the $2000 note, which matured sometime in July, 1867, the fundamental objection of the absence of any proper notice of dishonor from the notary, and the other objections above referred to, exist.

The note of $2081 fell due the 25th and 28th of April, 1867. The notice was every way defective. At this time the banking house was locked up—in nobody's occupation. The trustee had completed his examination of the documents and assets; the clerks he had temporarily employed were discharged; the books and papers were removed; and the building was closed. The succeeding occupants did not go into it until the 13th day of May. Mr. Rich's certificate shows, that he found the house closed, which, in his testimony, he attributes to his going there after banking hours, which would have been bad of itself. In point of fact, as shown by the proof, if Mr. Rich had gone to that building at any hour of the day on the 28th of April, he would have found it vacant and closed. *Tate vs. Sullivan*, 30 *Md.*, 464.

In order to entitle the holder of a note to treat it as dishonored before the expiration of the last day of grace, so as *on that day* to send notice of dishonor, to charge an endorser, an *actual demand*—sufficient, according to the circumstances of the case—is indispensable; for, without a demand, *non constat*, that the maker will not, before the day is over, pay it in some manner, either personally, or through an agent, if absent. *King vs. Crowley*, 61 *Maine*, 244, 250, 251; *Leftley vs. Mills*, 4 *T. R.*, 174; *Greeley vs. Thurston*, 4 *Greenl. R.*, 479; *Estes vs. Tower*, 102 *Mass.*, 66.

Where facts are relied on as *excusing* a demand, notice of such facts should be given to the endorser, just as

ordinarily notice of a presentment and demand is given. *Graham vs. Sangston,* 1 *Md.,* 67, 68; 2 *Greenl. Evid.,* 13*th Ed., sec.* 180, *note* 2; *Story on Prom. Notes, sec.* 348; *Armstrong vs. Thurston,* 11 *Md.,* 157; *Wetherall vs. Garrett,* 28 *Md.,* 463.

Notice of an *insufficient* demand will not bind the endorser; *Reynolds vs. Appleman,* 41 *Md.,* 621; for the same reason, notice of a demand, where none has been made, is without effect.

STEWART, J. delivered the opinion of the Court.

Jas. F. Purvis and Jas. F. Purvis, Jr., on the 3rd April, 1867, conveyed all their property to Orville Horwitz, in trust for the payment of their debts, as individuals or partners, according to their respective priorities.

Their creditors having been notified to file their claims, the Howard Bank, the appellant, filed its claim for certain notes, all of which was allowed, where Jas. F. Purvis was the drawer of the notes.

But upon five notes where he was merely the endorser, objection was made by other creditors, that there had not been the proper proceedings to hold him answerable as endorser.

These five notes consisted—

1st, of a note made by Sinclair & Purvis, dated February 21, 1867, at four months for $800, endorsed by Jas. F. Purvis and Robt. H. Sinclair.

2nd, note of James F. Purvis, Jr., dated 6th December, 1866, payable at four months for $1500, endorsed by Jas. F. Purvis.

3rd, note of Jas. F. Purvis, Jr., dated 12th March, 1867, payable at four months, endorsed by Jas. F. Purvis.

4th, note of Jas. F. Purvis, Jr., for $2000, dated 25th March, 1867, payable four months from date, endorsed by Jas. F. Purvis.

5th, note of Jas. F. Purvis, Jr., dated 25th August, 1866, payable at eight months for $2081, and endorsed by Jas. F. Purvis.

Full proof having been demanded, all other objections to the allowance of these notes have been abandoned, except those before stated.

The objection that Purvis at the time the notes were given and endorsed, was president of the bank, and not authorized to enter into such contract, being in violation of its charter, cannot be maintained since the decision in *Lester and Wife vs. Howard Bank,* 33 *Md.,* 558, and has not been urged.

The only question, therefore, is, has the commercial law been complied with, to make Purvis, the endorser, answerable for the payment of these notes.

The rule is a strict one, and deemed necessarily so, upon principles of public policy.

The engagment of the endorser is conditional, and any neglect or *laches* on the part of the holder of the note, in not making due presentment thereof, or not giving due notice of its non-payment by the drawer, will discharge him. *Tate vs. Sullivan,* 30 *Md.,* 464; *People's Bank of Baltimore vs. Brooke,* 31 *Md.,* 7.

In applying the established law governing in such case to the facts, or developed by the testimony, we find no error in the ruling of the Circuit Court.

Some of these notes were handed to Sangston, and others to Rich, as notaries, to pursue the proper steps to demand payment of the makers, and to give due notice of their dishonor.

The demand of payment of all of the notes was made, as it appears, at the banking house of Purvis & Co., and the notices of non-payment to the endorser, were there left. This completed the action of the notaries, and this is relied upon, as full compliance with the law, to hold the endorser responsible.

The firm of Purvis & Co. had failed at the time these notices were left at their banking house.

Mr. Horwitz, the trustee of the concern, had possession and afterwards it was occupied by other parties.

There is no evidence of any further effort being made, to present the notes, to the makers personally, or to give other notice of their non-payment to the endorser.

Purvis, Jr., on the 7th April, 1867, when one of the notes became due, resided in Baltimore, and the note might have been presented to him, at his residence.

The bank evidently relied upon the notaries to take the proper steps to hold the endorser. That would be sufficient, if they had pursued the required course.

Their notarial certificate of protest, &c., only furnishes *prima facie* evidence of the facts therein stated; but upon the entire evidence, there is an utter failure to show either, that due presentment of the notes was made to the drawer for payment, or due notice given to the endorser, of the failure to pay.

The condition upon which the endorser is responsible, has not been complied with, and he is not bound by his contract to pay the notes.

The order of the Circuit Court must be affirmed.

<div style="text-align: right;">

*Order affirmed, and
cause remanded.*