## CHARLES L. WOLF *v.* UNION TRUST COMPANY.

*Negotiable Instrument—Notice of Protest—Evidence as to Mailing—Custom of Business House.*

A protest of a note, stating that the notary "addressed" notices to the makers and indorsers, is not *prima facie* evidence that such notices were sent or delivered, Code, art. 13, secs. 6, 7, making the protest *prima facie* evidence in that regard only when it so states. pp. 388, 389

The insertion of the fact and manner of the notice to the parties secondarily liable on a negotiable instrument is not essential to the sufficiency of the notary's certificate of protest, though it is customary, since the statute makes such statement *prima facie* evidence of the facts recited. p. 388

That Code, art. 19, sec. 28, requires the comptroller to have printed blank forms of protest, and stamp them, and take receipts therefor when he delivers any of them to notaries public, does not operate to cure defects or to supply omissions in the notary's certificate of protest. p. 389

The failure of a notary's certificate of protest to furnish all the elements of proof necessary to entitle the payee to recover against the endorser does not preclude the admission of other evidence to supply this deficiency, as the proof required is not in contradiction of the statements of the protest, but is for the purpose of supplying its material omissions. pp. 389, 390

Code, art. 13, secs. 124, 125, 122 (Negotiable Instruments Act), makes the test of a sufficient notice to endorsers of non-payment of a note, when the person giving and those to receive the notice reside in the same place, depend upon the two indispensable requirements, that the notice is duly addressed, and that it is duly deposited in the postoffice, in any branch post-office, or in any letter box under the control of the post office department, in time to reach the maker and each of the endorsers in usual course on the day following the instrument's dishonor. p. 390

If the payee of a negotiable note is a banking institution or a commercial house and shows by proper evidence that it was the established usage, in the addressing and posting of its mail, in the course of its business, to place the mail in a designated receptacle or place whence it was daily collected and forthwith carried and mailed in the postoffice by a runner or messenger, constantly employed by the payee for that service, proof of seasonably putting a notice in this private mail box on the day of dishonor is evidence of the deposit of the notice in the post-office in time to reach the addressee in the usual course on the day following, when the person giving and the person to receive the notice reside in the same place, provided the notice be properly addressed, with postage prepaid.          pp. 391-395

Such evidence of the due mailing of a notice of dishonor does not create a conclusive presumption of law, but simply a rebuttable inference of fact which, if uncontradicted, is sufficient to support a finding of the jury that notice of dishonor was duly given by mail.                          p. 395

In such a case it is not necessary that the messenger or runner be called upon to testify that the custom as to the deposit of mail in the postoffice was followed at the particular time or in connection with the particular letter, the custom being testified to by another officer or employee of the payee institution.

p. 396

*Decided April 7th, 1926.*

Appeal from the Superior Court of Baltimore City (DUKE BOND, J.).

Action by the Union Trust Company against Charles L. Wolf. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Randolph Barton, Jr.,* and *Julius H. Wyman,* with whom was *Jacob S. New* on the brief, for the appellant.

*Walter H. Buck* and *James Morfit Mullen,* for the appellee.

PARKE, J., delivered the opinion of the Court.

The Baltimore and Eastern Shore Ferry Line, Inc., as maker, with Harry B. Wolf and Charles L. Wolf as the endorsers, gave, for value, to the Union Trust Company of Maryland, its promissory note for the sum of fifteen thousand dollars, payable at the office of the company four months after date. As the note fell due on Saturday, the statute provided that it should be presented for payment on the next succeeding business day, which was Monday, March 12th, 1923, and on that day the note was duly presented for payment and payment was refused. Code, art. 13, secs. 104, 94, 106, 102. The note was protested on the day of its dishonor by a notary public, whose position as vice-president of the banking company did not disqualify him from acting, as he was not a party to the dishonored instrument. Code, art. 68, sec. 12. The obligation was not thereafter paid or otherwise discharged, and suit was brought on July 1st, 1925, by the payee against the appellant, Charles L. Wolf, as endorser, under the Rule Day Act of Baltimore City (Act of 1886, chapter 184). A recovery was had by the payee, and the three bills of exceptions on the record present, substantially, but the single question of the legal sufficiency of the testimony to show that notice of the dishonor of the negotiable instrument had been given the endorser sued. Code, art. 13, secs. 82, 108; *Lightner v. Roach,* 126 Md. 476; *Bradley v. Ford Products Co.,* 139 Md. 388; *Leonard v. Union Trust Co.,* 140 Md. 201.

At the trial the appellee offered the note in evidence and proved that the note was duly presented, its payment demanded and refused; that the note was thereupon protested; and that it had not been since paid. The protest was given in evidence and by it was certified that on the day of the protest the notary "addressed written notices to the makers and endorsers of the said note informing them that it had not been paid, payment thereof having been demanded and refused, and that they would be held responsible for the payment thereof."

In order for the protest to be *prima facie* evidence under the statute that notice of dishonor had been given, it is necessary that the protest "shall state that notice of such non-payment has been sent or delivered to the party or parties to such note or bill, and the manner of such notice." Code, art. 13, secs. 6, 7. The manner of giving the notice may be by delivering it personally or through the mails. Code, art. 13, sec. 115. While the form of the protest used by the notary was sufficient, yet there was no statement that notice of the dishonor had either been sent or delivered to the parties to the note, much less any indication of the method adopted. The assertion that the notary had "addressed written notices to the makers and endorsers" of the negotiable paper is plainly not sufficient to fulfill the quoted requirement of the statute. When it is averred that the notary "addressed" the written notices, nothing is disclosed of what became of the written notices after they had been "addressed" by writing upon the notices the direction or superscription, giving the names and residences or places of business of the makers and endorsers of the promissory note. Whether the notices so addressed were delivered in person or through the mails is left to conjecture. Indeed, there is nothing in the certificate of the notary that is not as consistent with the inference that the notices had never been sent as that they had been served personally or had been forwarded by mail. The insertion of the fact and of the manner of the notice to the parties secondarily liable on a negotiable instrument is not essential to the sufficiency of the notary's certificate of protest, but its insertion is now customary in commercial usage, for the reason that when it is incorporated it becomes *prima facie* evidence of the facts recited under an express provision of the Negotiable Instruments Act. Code, art. 13, secs. 6, 7. Before the certificate can be given its statutory value as evidence against a party to the dishonored paper, it must strictly comply with the required precedent condition of a definite statement that notice has been given to the party or parties to

the negotiable instrument, together with the manner of such notice. The certificate of the notary in the instant case was *prima facie* evidence of the facts of presentment, demand and non-payment at the time and in the manner stated in the certificate of protest, but, for the reason pointed out, it was not *prima facie* evidence that notice of dishonor had been sent or delivered to the parties secondarily liable. Code, art. 13, secs. 6, 7. *Farmers Bank v. Bowie,* 4 Md. 290, 294, 295; *Ricketts v. Pendleton,* 14 Md. 320, 322, 329-330; *Staylor v. Ball,* 24 Md. 183, 189, 199; *Crowley v. Barry,* 4 Gill, 194; *Reier v. Strauss,* 54 Md. 278, 287; *Weems v. Farmers' Bank,* 15 Md. 231, 240; *Howard Bank v. Carson,* 50 Md. 18, 22, 27; *Tate v. Sullivan,* 30 Md. 464, 465; *People's Bank v. Keech,* 26 Md. 521, 527, 529, 530; *Nailor v. Bowie,* 3 Md. 251, 253, 256, 258; *Fulton v. Maccracken,* 18 Md. 528, 530, 541; *Citizen's Bank v. Howell,* 8 Md. 530, 531; *Graham v. Sangston,* 1 Md. 59, 65; *Hunter v. Van Bomhorst,* 1 Md. 504, 507; *People's Bank v. Brooke,* 31 Md. 7, 10; *Monroe v. Woodruff,* 17 Md. 159, 160, 164; *Jones on Legal Forms* (7th ed.), 1388, 1389.

The last cited cases are concrete illustrations not only of the insufficiency of the certificate of protest on this record to gratify the provision of the statute with respect to the statement of notice of dishonor having been sent or delivered to the parties and the manner of such notice, but also of the practice in that connection which has prevailed. It is quite true that the comptroller is required by law to have printed approved blank forms of protest of bills of exchange and promissory notes and stamp the same, and take receipts therefor, whenever he shall deliver any of them to the notaries public, but this obligation imposed upon the comptroller for record and revenue purposes does not operate to cure defects or to supply omissions or statements in a notary's certificate. Code, art. 19, sec. 28.

2. The failure of the notary's certificate to furnish all the elements of proof necessary to entitle a recovery by the payee against the endorser did not preclude the admission

of other testimony to supply this deficiency, as the proof required was not in contradiction of the statements of the protest, but was for the purpose of supplying its material omissions. *Hunter v. Van Bomhorst,* 1 Md. 511, 512; *Sasscer v. Farmers' Bank,* 4 Md. 409, 418, 419; *Tate v. Sullivan,* 30 Md. 464, 469-471; *Wetherall v. Clagett,* 28 Md. 465, 474, 475; *Wetherall v. Garrett,* 28 Md. 450, 456. The testimony on the point of notice of dishonor having been given to the parties was by the notary who protested the negotiable paper. This witness' evidence was in accord with the statements of his certificate of protest, and there is no dispute that the note was duly presented, its payment demanded and refused by the maker. As no notice of the dishonor of the note was delivered personally, the question is, Was there sufficient evidence of notice having been given by mail?

The statute provides that notice of dishonor may be given through the mails, and when it is duly addressed and deposited in the postoffice, the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails. Code, art. 13, secs. 115, 124. The party giving and the persons to receive the notice resided in Baltimore, and, therefore, the notice by mail had to be deposited in the postoffice in time to reach the maker and each of the endorsers in usual course on the day following. Code, art. 13, sec. 122. The Negotiable Instrument Act, therefore, made the test of a sufficient notice by mail depend upon two indispensable requirements: First, the notice must be duly addressed, and, second, duly deposited in the postoffice, in any branch postoffice, or in any letter box under the control of the postoffice department, in time to reach the maker and each of the endorsers in usual course on the day following the dishonor of the negotiable instrument. Code, art. 13, secs. 124, 125, 122.

The notary was the only witness in the cause, and his testimony and certificate of protest embrace all the evidence on the record. This evidence tended to prove that the notices of dishonor, in approved form, with postage prepaid and properly addressed to every one of the parties at its and

his place of business, in Baltimore, were, on the day of the protest, put by the notary in a mail basket maintained in its banking house by the Union Trust Company of Maryland; and that it was the established custom of the Union Trust Company to have its mail, including all the letters containing notices of dishonored and protested paper, daily and uniformly deposited in this mail basket, which was provided for that specific use; and every day a runner, who was employed by the company for this duty, collected at four o'clock of every afternoon, and about every hour thereafter, all the mail so put in this basket, and carried the mail, after every such collection, to the postoffice, where the mail was posted by the runner; and that the notices in this case were so sent with the regular mail to the postoffice.

The notary was a vice-president of the Union Trust Company and familiar with the matters with respect to which he testified. His evidence was in no way contradicted, but the appellant maintains that, in order to establish the mailing of a letter by proof of a private business custom or usage, whereby letters deposited in a particular place or receptacle are taken by an employee and mailed, it is necessary that proof of the custom or usage be supplemented by testimony showing a compliance with the usage or custom, or, specifically, by evidence of the appellee's runner, whose duty it was to take the letters so deposited and mail them, that he had actually mailed the notices of dishonor addressed and placed by the notary in the bank's mail basket. In support of this position, the appellant cited the early cases of *Flack v. Green,* 3 G. & J. 474; *Bell v. Hagerstown Bank,* 7 Gill, 216; *Brailsford v. Williams,* 15 Md. 150, and *Williams v. Brailsford,* 25 Md. 126. In the first of these cases the testimony offered to establish the due sending of notices of dishonor was said in *Bell v. Hagerstown Bank,* 7 Gill, 216, at p. 228, to have been "manifestly too loose and vague to raise the presumption it was intended to convey. Time, the essential ingredient in the notice, is indefinite. It does not appear when the letter was received by the house, or how soon after it, the

notice was forwarded to the endorser. It does not prove through what channel or direction, by whom or whose business it was among the partners and clerks of the house, to see it expedited, and whether it was forwarded by mail or personal message. There is nothing in the evidence to warrant a legal inference that it was the particular duty of any one of the firm or the clerks, to see that a proper direction was given to the notice by which it might reach the endorser." And, so, in *Brailsford v. Williams,* 15 Md. 150, the acceptor proved that he wrote a letter to the drawer of the bill of exchange containing a notice of dishonor of the bill on the day of its maturity, but could not recollect that the letter was mailed on that day nor did he know that it was mailed at all, but that the custom in his office was to write the letters of the house and leave them in his desk for his clerk to deposit in the postoffice, and the Court held that the evidence was legally insufficient to show that the letter had been mailed. Here, the comment in *Bell v. Hagerstown Bank, supra,* is applicable. It was not in proof that the letter involved was left by the writer in the desk, or when it came to the hands of the clerk, or what was the usage with reference to the manner or the time of the clerk's mailing of such letters as he found in the desk. Under these circumstances, the only person who had knowledge of the omitted facts essential to establish a due mailing of the letter was the clerk, who was not produced nor his absence accounted for. The retrial of this case resulted in a second appeal, which is reported in *Williams v. Brailsford,* 25 Md. 126. The clerk testified at the second trial that Tonge wrote the letters of the firm and generally carried them to the postoffice himself, and that when Tonge did not do so, he placed them on a desk or table in his office and directed him to carry them to the postoffice, but that the witness would not have put into the postoffice any letter he found there, unless Tonge had so directed, and that he had no recollection of mailing the letter in question. The Court rejected this testimony and characterized it "as too uncertain and indefinite to au-

thorize an inference or conclusion that the letter was in
fact mailed by him, and is very different from the evidence
adduced in the case of *Bell v. The Hagerstown Bank,* 7 Gill,
216."

In the last-mentioned case of *Bell v. The Hagerstown
Bank, supra,* the usage of the bank with respect to the daily
delivery of its letters and notices of dishonor to its regular
messenger for the purpose of immediate posting at the post-
office all such mail was established by the cashier, the teller,
and the messenger. The time of the due receipt of the par-
ticular notices of dishonor and the scaling and directing of
the notices on the day of their receipt to the drawer and en-
dorsers at their respective postoffice addresses was shown by
the evidence of the cashier, who could not testify whether
he delivered in person the notices to the messenger or left
them for collection by the messenger in the customary place,
but who did remember that the notices were not in this place
on his return the next morning to the bank. This testimony
was objected to as being incompetent and inadmissible to
establish that notices of dishonor had been given, and the
principal ground of objection was that the messenger had
simply testified to his uniform custom with respect to the
daily receipt and posting of the bank's mail, but had no inde-
pendent recollection of either having received or put in the
postoffice the particular notices involved in the action on
trial. In affirming the lower court in admitting this testi-
mony, it was distinctly held that it was not necessary to be
able to show by direct testimony that the messenger had actu-
ally deposited the specific notices in the postoffice on a par-
ticular day. And in the later case of *Lawrence Bank v.
Raney & Berger Co.,* 77 Md. 321, where the question was
if a notice had been received through the mail from a gar-
nishee in an attachment case, and the proof by one of the
parties was that a letter of notification was addressed, pre-
pared for the mail, and placed "among the mail of the com-
pany for that day," and that "in the course of business we
have a very great many letters mailed in a similar way," this

Court said: "If it be proven that a merchant has a particular method of dispatching his correspondence, and that one of his letters was properly written, copied, addressed and otherwise prepared for transmission through the postoffice, and was then placed among the mail for that day (that is, placed among the material intended for the postoffice), according to the usual habit of his house, and that this was the course of business, there follows a reasonable inference that such letter was forwarded and received by the party to whom it was addressed" (page 327). And see *Stiegler v. Eureka Life Ins. Co.,* 146 Md. 629, 648.

It will be seen that, under the decisions of this Court, the proof on the record in the instant case, as it was uncontradicted, would have justified the jury in the inference of fact that the letters of notification, which the notary testified "were sent with the regular mail to the postoffice," were duly mailed. It is true that the bank runner did not testify, but that fact simply went to the weight of the evidence, because, if he had gone on the witness stand, his testimony would have been cumulative evidence of the banking usage, whose fixed nature and uniformity had been proven by the uncontradicted evidence of the bank's vice-president. From the very nature of his duties, it would not have been credible for the bank runner to have remembered, as an independent fact, the mailing at a particular hour on a specific day of a certain letter which had been commingled with the mass of mail posted by him, unless there had been some unusual incident connected with its posting. See *Bell v. Hagerstown Bank,* 7 Gill, 216, 226, 227. The evidence given was sufficient to prove the bank's fixed method and systematic operation of its private postal service between its banking house and the postoffice. What was done was in the customary course of its business, and was a familiar practice of banking and commercial houses by which important and valuable mail, often in great volume, is daily and regularly collected from designated receptacles and posted by an employee selected for this important duty. The successful

operation of financial and business enterprises largely de-
pends upon the certainty, regularity, and promptness with
which their mail is forwarded; and the employment of spe-
cial messengers for that purpose could only be justified in
the common experience that mail is as certainly and uni-
formly transmitted by this common system as if every indi-
vidual writer had himself carried to the postoffice the mail
of which he was the author. The actual receipt of notice of
dishonor by the endorser was not necessary, as the payee
was only bound to exercise due diligence to give to give him
notice, and this is met when the notice is mailed within the
prescribed limit of time. So, if the payee is a banking
institution or a commercial house and shows by proper evi-
dence that it was the established and regular usage in the
addressing and posting of its mail, in the course of its busi-
ness, to place the mail in a designated receptacle or place
whence it was daily collected and forthwith carried and
mailed in the postoffice by a runner or messenger, who was
constantly employed by the payee for that service, proof of
seasonably putting a notice of dishonor in this private mail
box of the payee on the day of dishonor is evidence of the
deposit of the notice in the postoffice in time to reach the
addressee in the usual course on the day following, when the
person giving and the person to receive the notice reside in
the same place, provided the notice be properly addressed,
with postage prepaid. This evidence of the due mailing of
a notice of dishonor does not create a conclusive presump-
tion of law, but simply a rebuttable inference of fact, which,
if uncontradicted, is sufficient to support a finding of the
jury that notice of dishonor was duly given by mail. *Bell
v. Hagerstown Bank,* 7 Gill, 216; *Lawrence Bank v. Raney
& Bergen Co.,* 77 Md. 321, 326-328; *Sasscer v. Bank,* 4 Md.
409, 419-422; *Munroe v. Woodruff,* 17 Md. 159, 164; *Mc-
Ferren v. Goldsmith-Stern Co.,* 137 Md. 573, 580; *Sloan v.
Grollman,* 113 Md. 197, 198; 1 *Wigmore on Evidence* (2d
ed.), sec. 95, and notes; *Central Nat. Bank v. Stoddard,* 83
Conn. 332, 76 Atl. 472; *Thorne v. Aler,* 92 W. Va. 290:

*Myers v. Moore-Kile Co.,* 279 Fed. 233; *Ft. Smith v. F. W. Heitman Co.,* 44 Tex. Civ. App. 358, 98 S. W. 1074; *Swampscott Mach. Co. v. Rice* (1893), 159 Mass. 404; *Skilbert v. Garbett,* 7 Q. B. 846, 115 Eng. Reprint, 706.

The courts are not in harmony in their rulings on the question. The case of *Friedman v. Maltinsky,* 260 Pa. St. 312, and a number of others collected in 25 *A. L. R.,* 1 to 22, support the theory of the appellant, that the evidence offered was not sufficient in the absence of the proof of the bank runner to establish that the custom had been followed in this particular instance. The uncontradicted testimony of the vice-president, who was the notary, clearly proved the usage, and the deposit of the notice for mailing according to that usage or custom, which was evidence that the custom had been followed, unless, as some of the decisions indicate, the runner must testify either (a) that he took the particular sealed letter, with its contents unknown to him and nothing in its external appearance to attract his attention or to indicate its contents, out of the bank's private mail box, and carried it to the postoffice, where he had mailed the letter by his own hand, with his eye upon its superscription, all remembered years after the event, which would have been a manifest falsehood, as there was no intimation of any peculiar circumstance inducing such an extraordinary course and recollection (*Bell v. Hagerstown Bank,* 7 Gill, 226); and which, moreover, would not have been the inference of a mailing from proof of custom, but, in form, direct proof of a known fact; or (b) that he had invariably collected the letters from the bank's mail box and had posted them, and that he had performed this duty on the day of the dishonor, which would have been but the cumulative proof of a custom already established in the instant appeal by competent and undisputed testimony. Our decisions do not justify going to the extent indicated by the cases cited by the appellant, and we are constrained to adhere to the rule supported by the decisions of this Court, because it seems sound on principle, and to be in accord with what the mature experience of

the financial and commercial world has accepted as reliable evidence of a daily commonplace.

The appellant did not attempt to show that the notice of dishonor had not been duly received by him through the mail, nor was there any other evidence to contradict the proof on the part of the appellee tending to establish the timely mailing of the notice, but the case was presented on the evidence of the appellee, which, for the reasons given, was properly admitted by the rulings of the court on the first and second exceptions; and which afforded the proof necessary to sustain the action of the court in the granting and rejecting of the prayers, which was the ground of the third and final bill of exceptions. *Supra.* *Union Bank of Brooklyn v. Deshel,* 139 App. Div. (N. Y.) 217, 218. Compare *Bittenbender Co. v. Bergen,* 277 Pa. St. 27.

*Judgment affirmed, with costs to the appellee.*